S. D. REALTY COMPANY, Appellant, v. SEWERAGE COMMISSION OF CITY OF MILWAUKEE and others, Respondents.

*October 30—November 28, 1961.*

18

For the appellant there were briefs by *Foley, Sammond & Lardner,* and oral argument by *Alan H. Steinmetz,* all of Milwaukee.

For the respondents there was a brief by *John J. Fleming,* city attorney, and *Ewald L. Moerke, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys, for the Sewerage Commission of the city of Milwaukee; and by *Albert B. Houghton* of Milwaukee, for the Metropolitan Sewerage Commission of Milwaukee county; and oral argument by *Mr. Moerke* and *Mr. Houghton.*

For the remaining respondents, Luber, Lubotsky, and L. & L. Operating Company, Inc., there was a brief and oral argument by *Sidney Usow* of Milwaukee.

CURRIE, J. While the 1958 lease does not expressly abrogate the 1956 agreement, the provisions of the lease are inconsistent with those of the agreement. Furthermore, it is conceded that the developers did not commence con-

struction of the installation to inclose the river within three years of the date of the agreement, and thus under its own terms the agreement has ceased to exist. Therefore, we shall forego any further consideration of the 1956 agreement in this opinion because any issue relating thereto is moot.

The remaining issues to be considered on this appeal are:

(1) Is plaintiff entitled to maintain this taxpayers' action attacking the validity of the 1958 lease and the expenditures made by the city commission pursuant thereto?

(2) Who had legal title to the subject property at the time this lease was executed?

(3) If title was vested in either the district or the city commission, did any power exist to lease such public property for a private purpose?

(4). If question 3 is answered in the affirmative, could the city commission make such a lease without approval or participation by the metropolitan commission?

(5) Did the expenditure by the city commission of the $191,800, to construct the tunnel through the subject property, constitute an illegal expenditure of public funds for a private purpose?

*Right of Plaintiff to Maintain Action.*

Defendants advance four reasons why they deem plaintiff is not entitled to maintain this action: (1) That plaintiff has failed to allege that it has sustained, or will sustain, some pecuniary loss; (2) that plaintiff is seeking to protect its own private interests rather than those of taxpayers as a class; (3) that the action is barred by laches; and (4) that the controversy is now moot.

In order to maintain a taxpayers' action, it must be alleged that the complaining taxpayer and taxpayers as a class have sustained, or will sustain, some pecuniary loss;

otherwise the action could only be brought by a public officer. *McClutchey v. Milwaukee County* (1941), 239 Wis. 139, 300 N. W. 224, 300 N. W. 917, 137 A. L. R. 628, and cases cited therein. However, a taxpayer does have a financial interest in public funds which is akin to that of a stockholder in a private corporation. *Roberts v. Madison* (1947), 250 Wis. 317, 320, 27 N. W. (2d) 233; 52 Am. Jur., Taxpayers' Actions, p. 4, sec. 4. The instant complaint alleges that a greater expenditure of public funds will be required to construct the tunnel than would be the case if the river branch would be carried through an open watercourse; that such additional expense serves no public purpose but only the private purposes of the developers and L. & L. Operating Company, Inc.; and that such expenditure is, therefore, illegal.

Any illegal expenditure of public funds directly affects taxpayers and causes them to sustain a pecuniary loss. This is because it results either in the governmental unit's having less money to spend for legitimate governmental objectives, or in the levy of additional taxes to make up for the loss resulting from the expenditure. Though the amount of the loss, or additional taxes levied, has only a small effect on each taxpayer, nevertheless it is sufficient to sustain a taxpayers' suit. *Bechthold v. Wauwatosa* (1938), 228 Wis. 544, 550, 277 N. W. 657, 280 N. W. 320. In *Wagner v. Milwaukee* (1928), 196 Wis. 328, 330, 220 N. W. 207, it was stated:

"The illegal disbursement of this money would constitute an invasion of the funds of the city in which each individual taxpayer has a substantial interest, notwithstanding the fact that the payment of this sum would not necessarily result in increased taxation. *The fact that the ultimate pecuniary loss to the individual taxpayer may be almost infinitesimal is not controlling."* (Emphasis supplied.)

Defendants allude to the fact that plaintiff's motivation for bringing this suit is its ownership of a competing shopping center. However, a private interest does not preclude a plaintiff from maintaining a taxpayers' suit, as long as the public interest is also involved. *Chippewa Bridge Co. v. Durand* (1904), 122 Wis. 85, 108, 99 N. W. 603. Cf. *Druml Co. v. Knapp* (1959), 6 Wis. (2d) 418, 421, 94 N. W. (2d) 615.

Defendants also contend that plaintiff is barred from pursuing any possible remedy by the doctrine of laches, in that the suit was not initiated until March, 1959, despite the fact that plaintiff had knowledge of the arrangement at least since the date of the 1956 agreement. However, the 1956 agreement did not obligate the expenditure of any public funds for inclosing the stream. The 1958 lease contained no express covenant obligating the city commission to make such expenditure. Whether the same constituted an implied term of the lease is unnecessary to decide. The instant action was commenced on March 6, 1959, the very day the tunnel construction contract became operative through the signature of the city controller and the approval by the city attorney. A taxpayer has a reasonable time in which to institute his action. *Leuch v. Egelhoff* (1949), 255 Wis. 29, 31, 38 N. W. (2d) 1. Inasmuch as the earliest possible date when the city commission became obligated to inclose the watercourse occurred at the time of making the lease on December 15, 1958, we hold that the commencement of the action on March 6, 1959, was timely.

Moreover, an essential element of the defense of laches is that the delay in the institution of suit has resulted in prejudice to the party asserting such defense. *Estate of Seefeldt* (1957), 1 Wis. (2d) 509, 516, 85 N. W. (2d) 500. The only conceivable prejudice here would be the

change of position which occurred as a result of the city commission's becoming obligated to expend money to construct the tunnel.

Defendants further contend that the case is moot inasmuch as the work on the tunnel project has been completed and the contractor paid. These facts do not prevent the maintenance of the action. *Cawker v. Milwaukee* (1907), 133 Wis. 35, 38, 113 N. W. 417. Since the relief sought by plaintiff, if granted, could be utilized to enforce the repayment of the public funds expended, or possibly to void the lease, the questions presented by this action are not moot. A decision on these questions can have a practical legal effect upon the existing controversy, and, therefore, this case does not fall within the definition of a "moot case" found in *Thoenig v. Adams* (1940), 236 Wis. 319, 322, 294 N. W. 826, and *Smith v. Smith* (1932), 209 Wis. 605, 608, 245 N. W. 644.

*Legal Title to Subject Property.*

In order to resolve the issue of who had legal title to the subject property at the time of the making of the 1958 lease, it is necessary to analyze the statutes creating and controlling the operation of the city commission and the district.

The city commission was established by ch. 608, Laws of 1913, which provided for the operation of a sewerage system in cities of the first class under a city sewerage commission. This act was apparently treated as a special act by the revisor of statutes, as it was never published in the Wisconsin statutes. However, it is still in effect except as changed by subsequent amendments.

Sec. 6 of such act provides: "Any such city acting by and through the agency of such commission may acquire . . . any land or property . . . for the purpose of con-

structing and establishing said sewerage system. . . ." We interpret this statutory provision to mean that the city commission, in acquiring land, would be acting as an agent of the city and that title to the acquired land would be in the city, not the commission. However, we think this result was changed by the enactment of ch. 554, Laws of 1921, which created the Metropolitan Sewerage Commission of Milwaukee county. While the terms of this act apply to any county having within its borders a city of the first class, Milwaukee county is the only county which meets such qualification. This 1921 act also created the Metropolitan Sewerage District, although the term "district" was not used in the statutes until much later. See *Thielen v. Metropolitan Sewerage Comm.* (1922), 178 Wis. 34, 189 N. W. 484; *Miller v. Milwaukee* (1924), 182 Wis. 549, 196 N. W. 235.

Sec. 8 of ch. 554, Laws of 1921, provided for payment by the district to the city commission for all sewerage facilities constructed by the city commission prior to the creation of the metropolitan commission. These payments were to be made out of funds derived from county taxes. This section also provided that thereafter the district would reimburse the city commission for expenses incurred in the operation of the system within the city. All payments were to be made by appropriate accounting credits rather than physical transfers of funds. We deem there was manifest a legislative intent that the district would own all the facilities and operate them in the city through the agency of the city commission and outside the city through the agency of the metropolitan commission.

The property here in issue was acquired in 1950 under two deeds whereby the "Sewerage Commission of the city of Milwaukee, a Quasi-Municipal Corporation" was named as grantee. Plaintiff contends that the city commission had no power to acquire property in its own name and,

thus, that title to this property was in the city of Milwaukee by reason of sec. 6 of the 1913 act. This argument fails for at least two reasons:

(1) As already pointed out, it was the intent of the legislature in creating the district that all facilities in the city of Milwaukee formerly operated by the city commission, would thereafter be the property of the district. The south branch of the Kinnickinnic river performs a drainage function, and sec. 5 of ch. 608, Laws of 1913, had placed matters of drainage under the jurisdiction of the city commission. Thus, whenever the city commission acted to acquire property after creation of the district, it would have been acting as agent for the district and not the city. The statutory pattern of operation of the district, at the time of the acquisition in 1950, supports this agency theory. See subs. (7) (c), (8) (a), (10), and (11), sec. 59.96, Stats. 1949. Sec. 59.96 (6) (j) was amended by ch. 595, Laws of 1953, to expressly spell out this agency relationship. While this amendment did not operate retroactively, we consider that it merely set forth expressly that which was already implied by the prior provisions of sec. 59.96.

(2) The affidavit of Otto Jokisch, chief accountant for the city commission, states that payment for the subject property came directly from funds of the city commission and the district, and "that no part of such funds came from the city of Milwaukee, except through taxation of city residents and property owners by way of a county levy for taxes. . . ." Thus, any funds supplied by the city commission for the purchase of the subject property were actually also district funds.

For the reasons stated, we deem that title to the subject property has been in the district at all times since its acquisition in 1950.

## *Power to Lease.*

At the time of execution of the 1958 lease, the district possessed no express statutory power to alienate or lease property. However, we conclude that it possessed an implied power to do so.

In *Kranjec v. West Allis* (1954), 267 Wis. 430, 66 N. W. (2d) 178, this court had before it a lease of city park land made by the city of West Allis and its park commissioners. The land was to be used as a private parking lot for automobiles of employees of the lessee, a private business corporation. In upholding the lease, the court stated (p. 434) : "Municipalities have the same right, unless restricted by statute, to convey property as they have to acquire property, and such matters are within the reasonable discretion of the proper municipal authorities." Furthermore, 10 McQuillin, Mun. Corp. (3d ed.), p. 96, sec. 28.42, states: "Generally, a municipality may lease its property which is no longer required for municipal or other public use."

The annotations in 63 A. L. R. 614, and 133 A. L. R. 1241, indicate that the majority rule in this country is that a municipality cannot lease municipal property in the absence of statutory authority. However, we are satisfied that the rule in Wisconsin is otherwise.

Both commissions are vested by statute with the power to acquire lands by purchase, gift, lease, or eminent domain. Sec. 6, ch. 608, Laws of 1913; and sec. 6 (i), ch. 554, Laws of 1921, now sec. 59.96 (6) (j), Stats. 2 Nichols, Eminent Domain (3d ed.), p. 453, sec. 7.223, states that the power to sell lands taken by eminent domain no longer needed for public use "is latent in every taking, and is very different from a taking of land with a contemporaneous

knowledge and purpose that a definite and separable part is not necessary for the public use." This statement by Nichols was quoted with approval by this court in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 203, 60 N. W. (2d) 873. See also *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 583, 66 N. W. (2d) 362.

It is apparent that once the south branch of the Kinnickinnic river is incased in the tunnel, the district has no use for the ground surface above the tunnel. Therefore, the lease of such surface to the L. & L. Operating Company, Inc., falls within the rule that a Wisconsin municipality may lease municipal lands no longer required for public use. Plaintiff concedes that municipalities such as cities possess such inherent power, but contends that this is not true of quasi-municipal corporations such as the district, the city commission, or the metropolitan commission. For this purpose, we do not consider that there is any valid distinction between a quasi-municipal corporation and a true municipal corporation.

*Necessity of Participation by the Metropolitan Commission.*

The instant lease was executed by the city commission "acting for and on behalf of the Metropolitan Sewerage District," as lessor. The metropolitan commission took no official action to authorize the lease even though legal title to the subject property was in the district. This raises the issue of whether the lease was invalid because of nonparticipation by the metropolitan commission in either the authorization or execution of the lease.

Ch. 608, Laws of 1913, as amended, and sec. 59.96, Stats., spell out the separate powers of the city and metropolitan commissions, respectively. In 1958 when the lease was made, there was no statutory requirement necessitating the participation of the metropolitan commission in the making

of the lease. Sec. 59.96 (6) (1) provides that: "The powers of the [metropolitan sewerage] commission shall not extend to or apply to the territory of any city of the first class which may be constructing, building, and operating its sewerage system under a commission provided by law." Thus, this statute expressly excluded any power of the metropolitan commission to act in the matter, and the making of the lease fell entirely within the sphere of power of the city commission.

Subsequently, the legislature has seen fit to enact ch. 210, Laws of 1959, which amended sec. 59.96 (6) (j), Stats. Under this amendment, real estate acquired by eminent domain by the city commission may be sold or leased, when no longer needed, by joint action of the city commission and the metropolitan commission. Because this amendment was enacted subsequent to the making of the instant lease, it is of no significance in this appeal.

### Public Purpose.

The affidavit of Raymond D. Leary, chief engineer of the city commission, establishes that the inclosing of this watercourse tends to promote the public safety, health, and welfare. Leary pointed out that if not so inclosed, fencing would be required to protect children from falling in the stream. He also stated that in times of heavy rainfall sewage is bypassed into the stream and then, if a dry spell thereafter ensues, some of the bypassed sewage is likely to collect in stagnant pools.

Even without the Leary affidavit, this court could take judicial notice that inclosing a stream in an urban area tends to protect the public safety and health. Whether the expenditure of public funds for such a purpose would be justified is a matter of discretion for the municipality or agency having the authority to make the improvement, pro-

vided such discretion is exercised in good faith. There is nothing presented in the record that indicates the city commission did not proceed in good faith.

Moreover, the city commission, in determining whether to authorize a certain improvement lying within the discretion vested in it by the legislature, is performing a quasi-legislative function. This court has held that the motives which may prompt a legislative body, such as a city council, in acting to authorize a public improvement, are not within the field of judicial scrutiny. *Wagner v. Milwaukee* (1923), 180 Wis. 640, 645, 192 N. W. 994; appeal dismissed, 266 U. S. 585, 45 Sup. Ct. 124, 69 L. Ed. 454; *Tilly v. Mitchell & Lewis Co.* (1904), 121 Wis. 1, 11, 98 N. W. 969. We deem that the same rule is applicable here to the exercise of discretion by the city commission, since there is no showing that it acted in bad faith.

Plaintiff contends that the tunnel serves the private purposes of the developers and L. & L. Operating Company, Inc., and that such private purpose was the motivating factor which caused the installation of the tunnel. Even if the private purpose was a factor which motivated the expenditure, it would not invalidate the lease or the expenditure of public funds to construct the public improvement. *Wisconsin River Improvement Co. v. Pier* (1908), 137 Wis. 325, 340, 118 N. W. 857; *Churchill v. Grants Pass* (1914), 70 Or. 283, 290, 141 Pac. 164; *State ex rel. Reclamation Board v. Clausen* (1920), 110 Wash. 525, 188 Pac. 538; 2 Nichols, Eminent Domain (3d ed.), p. 449, sec. 7.222. Furthermore, urban-redevelopment laws which authorize the acquiring of property with public funds, and its resale to private interests, have generally been upheld as serving a public purpose. *David Jeffrey Co. v. Milwaukee, supra; Belovsky v. Redevelopment Authority* (1947), 357 Pa. 329, 54 Atl. (2d) 277.

It is our considered judgment that, in the absence of any showing of bad faith on the part of the city commission, we could only hold the expenditure of public funds illegal, on the ground of serving a private purpose, if no public purpose were served thereby. As previously pointed out, the inclosing of the stream does serve a public purpose.

*By the Court.*—Judgment affirmed.