Kathleen HART, Barbara Jackson, Richard Lansing, Roxie Boom, James Barrett, Kenneth Smith, Larry Marx, Ed De No Nomie, Sarah Backus, August Backus, Phillip Blank, Bea Blank, George Amour, Richard Watkins, Stan Yasaitis, David Keach, Suzanne Cohen, Richard Berghofer, Faye Anderson, Dismas Becker, Maureen Plevin, Rob Thomas, Louise Lumpkin, James Young and Grant Waldo, Plaintiffs-Appellants,

v.

F. Thomas AMENT, in his capacity as Milwaukee County Executive, the Milwaukee County Board of Supervisors and Milwaukee Public Museum, Inc., a Wisconsin non-profit corporation, Defendants-Respondents.

Supreme Court

*No. 92–1720. Oral argument April 28, 1993.—Decided June 8, 1993.*

(Also reported in 500 N.W.2d 312.)

For the plaintiffs-appellants there were briefs (in the court of appeals) by *Ed Garvey, Michael Bauer* and *Cullen, Weston, Pines & Bach,* Madison and oral argument by *Ed Garvey.*

For the defendants-respondents there were briefs (in the court of appeals) by *Robert G. Ott, James T. McClutchy* and *Milwaukee County Corporation Counsel,* Milwaukee and *Thomas L. Shriner, Jr., James M. Caragher* and *Foley & Lardner,* Milwaukee and oral argument by *Thomas L. Shriner, Jr.*

STEINMETZ, J.   There are two issues presented in this case. First, whether the plaintiffs, a group of Milwaukee county taxpayers, possess standing to challenge Milwaukee county's decision to transfer the management of the Milwaukee Public Museum to Milwaukee Public Museum, Inc., a nonprofit corporation formed for the purpose of managing the museum, by entering into a lease and management agreement with said corporation. And second, assuming the plaintiffs have standing to bring this action, whether Milwaukee county had the authority to enter into the challenged transaction.

The trial court held that the plaintiffs possessed standing to challenge the above-described transaction and that Milwaukee county had the authority to enter into the transaction. The plaintiffs appealed. On January 12, 1993, we granted the defendants' petition to bypass the court of appeals.

On November 12, 1991, the Milwaukee county board authorized the county executive and county board staff to negotiate an agreement providing for the transfer of operation and management of the Milwaukee County Public Museum (museum) to Milwaukee Public Museum, Inc. (MPMI), a nonprofit corporation. Subsequently, the county board approved documents relating to the transfer for execution by the county executive. The county executive and MPMI signed these documents on March 30, 1992, after the trial court's decision in this action.

The documents comprising the agreement between the county and MPMI include the following: (1) Agreement in Respect of Milwaukee Public Museum (setting forth the purpose and overall structure of the agreement); (2) Articles of Incorporation of Milwaukee Public Museum, Inc.; (3) Bylaws of Milwau-

696

kee Public Museum, Inc.; (4) Lease and Management Agreement; and (5) Agreement as to Employees.

MPMI's Articles of Incorporation recite that MPMI "is organized and shall be operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code." The articles also indicate that MPMI is a nonstock, nonprofit corporation.

Under MPMI's bylaws, the corporation's directors are all appointed by the county executive and approved by the county board. The Lease and Management Agreement between the county and MPMI (1) prohibits amendments to MPMI's articles and bylaws without county approval; (2) requires MPMI to operate the museum as a facility open to the general public; (3) requires MPMI to obtain county board approval of its accession and deaccession policy;[1] (4) requires prior approval by the county board of the deaccessioning of any artifact; and (5) requires MPMI to comply with the Wisconsin Open Records and Meetings Laws.

The initial term of the Lease and Management Agreement is five years. This term can be terminated by the county for any reason upon one year's prior written notice. The Lease and Management Agreement may be extended for successive five-year terms, subject to either party's right to terminate it at the end of any term. The county is not obligated to extend the agreement, and its obligation to fund MPMI does not extend beyond the initial term unless the county chooses to extend the term. At the end of any term, if the agreement is not renewed, MPMI is required to surrender possession of all real and personal property, including

---

[1] As described in the lease and management agreement, "accession" and "deaccession" refer to acquisition and disposal of museum artifacts.

artifacts, to the county. The Lease and Management Agreement does not contain an option to purchase.

The Agreement as to Employees provided museum employees the option of either continuing as county employees in another capacity or becoming employees of MPMI. A museum employee who stayed with the museum was (1) hired at a rate of pay equal to the rate of pay last received by the employee from the museum; (2) permitted to carry over all accrued vacation, sick leave, overtime, and personal days; and (3) offered fringe and pension benefits substantially equivalent to the fringe and pension benefits the employees received from the county.

Plaintiffs are a group of county taxpayers who initiated this action against the Milwaukee county executive, the Milwaukee county board of supervisors, and MPMI (hereinafter referred to collectively as county). The complaint asked for a judgment declaring the agreement between Milwaukee county and MPMI invalid and permanently enjoining the county from entering similar agreements. The asserted ground for this judgment was that Milwaukee county lacks statutory authority to transfer responsibility for operation of the museum to a private corporation.

In addition, the complaint alleges that the museum's then-current annual operating budget (as an arm of the county) included revenue of $5.2 million from Milwaukee county's tax receipts. It also alleged that during the initial five-year term of the agreement, Milwaukee county would pay MPMI the fixed sum of $4.3 million annually for management and operation of the museum.

As to the first issue presented, we conclude that the plaintiffs possess standing to bring the instant action. The county argues that the plaintiffs lack

standing because they have failed to allege that they would suffer a pecuniary loss as a result of the contract between the county and MPMI. To support this argument, the county points out that the plaintiffs' complaint alleges that the museum's then-current annual operating budget included revenue of $5.2 million from Milwaukee county's tax receipts. In addition, the complaint alleges that during the initial five-year term of the agreement, Milwaukee county would pay MPMI the fixed sum of $4.3 million annually for management and operation of the museum. Thus, the county argues that the plaintiffs have effectively demonstrated that the challenged transaction will save taxpayer money. We reject this argument.

"In order to maintain a taxpayers' action, it must be alleged that the complaining taxpayer and taxpayers as a class have sustained, or will sustain, some pecuniary loss; otherwise the action [can] only be brought by a public officer." *S.D. Realty Co. v. Sewerage Comm.,* 15 Wis. 2d 15, 21–22, 112 N.W.2d 177 (1961). The alleged pecuniary loss need not be substantial in amount. Even a loss or potential loss which is infinitesimally small with respect to each individual taxpayer will suffice to sustain a taxpayer suit. *Id.*

The plaintiffs possess standing to bring this action because they have alleged that they may suffer a pecuniary loss from the challenged transaction. All 25 plaintiffs are taxpayers in Milwaukee county. As such, they each have a "financial interest in public funds . . . akin to that of a stockholder in a private corporation." *Id.* at 22. Plaintiffs sue not only in their own right, but as representatives of all Milwaukee county taxpayers.

The fact that the county's contribution to MPMI will apparently be less than its contribution to the museum as a county agency does not conclusively indicate that the challenged transaction will result in tax savings to county taxpayers. To the contrary, MPMI may not be able to operate the museum for less than the county operated the museum unless it reduces museum services or the quality of those services. If the reduction in the value of museum services is ultimately greater than the reduction in tax dollars expended to support those services, a pecuniary loss to taxpayers results.

For example, one budget category MPMI could reduce is salary and benefits.[2] Lower salaries and benefits can lead to the loss of competent personnel and a concomitant reduction in service quality. If the reduction in value of the museum services is greater than the reduction in salaries and benefits, a pecuniary loss to taxpayers results.

As to the second issue presented, we hold that Milwaukee county has the authority to enter into the instant transaction. This authority exists in the legislature's broad grant of home rule authority to Wisconsin counties under sec. 59.025, Stats. It also exists in the legislature's specific grant of authority to

---

[2] Although county employees who wish to stay with the museum will be hired by MPMI at a rate of pay equal to the rate of pay last received by the employee from the museum, MPMI has not agreed to provide the salary or cost of living increases these individuals might have been entitled to as county employees. Fringe benefits are similarly treated. Thus, over time, MPMI may pay its employees less than what those individuals would have received had the museum remained a county agency.

convey county property under sec. 59.07(1) and to establish and maintain a museum under sec. 59.07(33).

In sec. 59.025, Stats., the legislature granted Wisconsin counties broad home rule authority to act on matters of local concern:

> **59.025 Administrative home rule.** Every county may exercise any organizational or administrative power, subject only to the constitution and any enactment of the legislature which is of statewide concern and which uniformly affects every county.

Section 59.026 requires that the powers conveyed by sec. 59.025 are to be expansively construed.

> **59.026 Construction of powers.** For the purpose of giving to counties the largest measure of self-government in accordance with the spirit of the administrative home rule authority granted to counties in s. 59.025, it is hereby declared that this chapter shall be liberally construed in favor of the rights, powers and privileges of counties to exercise any organizational or administrative power.

To facilitate the exercise of this authority, the legislature has given counties express power to perform certain specific acts, including the power to contract and the power to acquire and convey real property:

> **59.01 Body corporate. (1)** Status. Each county in this state is a body corporate, empowered to . . . acquire and hold, lease or rent real and personal estate for public uses or purposes, . . . sell, lease and convey the same, . . . [and] make such contracts and to do such other acts as are necessary and proper to the exercise of the powers and privileges granted

and the performance of the legal duties charged upon it.

However, county powers are not limited by enumeration:

**59.07 General powers of board.** The board of each county shall have the authority to exercise any organizational or administrative power, subject only to the constitution and any enactment of the legislature which grants the organizational or administrative power to a county executive or county administrator or to a person supervised by a county executive or county administrator or any enactment which is of statewide concern and which uniformly affects every county. *Any organizational or administrative power conferred under this section shall be in addition to all other grants. A county board may exercise any organizational or administrative power under this section without limitation due to enumeration.* (emphasis added).

The plaintiffs do not contend that the proposed agreement violates the state constitution or a legislative enactment of statewide concern. *See* sec. 59.025, Stats. Rather, they assert, without citation to authority, that while a county's home rule powers may enable it to transfer the management of its public museum from one county department to another, such powers do not authorize the transfer of control and ownership to a nongovernmental entity. We disagree.

The above-quoted sections of Chapter 59 reflect a legislative intent to allow county governments to act on matters of local concern in any manner they deem appropriate. Counties have broad authority to direct local matters. Section 59.025, Stats. In exercise of this authority, counties may enter into real estate contracts. Section 59.01. By legislative mandate, sec.

59.026, this court is required to liberally construe a county's power to contract. The transaction at issue is a contract involving real estate and therefore falls well within county authority. No provision of Chapter 59 expressly prohibits the instant transaction. Accordingly, if in the Milwaukee county board's judgment, the museum can be operated more efficiently and with less tax expenditure through a non-profit corporation, the county has the authority under secs. 59.025, 59.026, and 59.01 to make those arrangements.

In addition to its home rule authority, Milwaukee county is specifically empowered to enter into the instant transaction by sec. 59.07, Stats. That section enumerates the powers expressly granted by the legislature to county boards. As mentioned above, these express grants of power do not limit a county's home rule authority. Section 59.07(1). In pertinent part, sec. 59.07 states as follows:

> **59.07 General powers of board. . . .** The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language:
>
> **(1)** PROPERTY. . . . (c) *Transfers.* Direct the clerk to lease, sell or convey or contract to sell or convey any county property . . . on such terms as the board approves.
>
> . . . .
>
> **(33)** PUBLIC MUSEUMS. (a) Appropriate money for the establishment, expansion, operation and maintenance of public museums in the county, including, but not limited to, any public museum owned by a city.
>
> (b) Acquire, establish, expand, own, operate and maintain a public museum in the county and appropriate money for such purposes, except that a public museum owned by a county under this sub-

section may seek tax-exempt status as an entity described under section 501(c)(3) of the internal revenue code.

Milwaukee county's conveyance of museum property to MPMI is clearly authorized by sec. 59.07(1)(c), Stats., which expressly states that county boards may convey county property on terms within the board's discretion.

Similarly, Milwaukee county's decision to operate the museum through MPMI is authorized by sec. 59.07(33)(b), Stats. The strict county controls included in the agreement, which are detailed above, make clear that MPMI was "established" and is "maintained" by the county in accord with sec. 59.07(33)(b).

The fact that sec. 59.07(33), Stats., specifically addresses county authority to operate a museum and does not expressly permit leasing of county museum property does not mean that the powers granted under sec. 59.07(1)(c) are inapplicable to museums. In 52 Op. Att'y Gen. 356, 359 (1963), the Wisconsin attorney general opined that "where a specific section of the statutes can be found granting the county board power to act in a certain area[,] . . . the board can lease, sell, convey, etc., county property under sec. 59.07(1) to effectuate that power." Here, sec. 59.07(33) grants the county board power to act with regard to public museums; therefore, under sec. 59.07(1)(c), the county is permitted to convey museum property.

In summary, we hold that the plaintiffs have standing to maintain the instant action. We also hold that Milwaukee county has statutory authority to enter into the transaction before us.

704

*By the Court.*—The order of the Milwaukee county circuit court is affirmed.