VOTERS WITH FACTS, PURE SAVAGE ENTERPRISES, LLC,
Wisconsin Three, LLC, 215 Farwell LLC,
Dewloc, LLC, Leah Anderson,
J. Peter Bartl, Cynthia Burton,
Corinne Charlson, Maryjo Cohen,
Jo Ann Hoeppner Cruz, Rachel Mantik,
Judy Olson, Janeway Riley,
Christine Webster, Dorothy Westermann,
Janice Wnukowski, David Wood
and Paul Zank,
Plaintiffs-Appellants,†

v.

CITY OF EAU CLAIRE and
City of Eau Claire Joint Review Board,
Defendants-Respondents.

Court of Appeals

*No. 2015AP1858. Submitted on briefs July 1, 2016.
—Decided May 31, 2017.*

2017 WI App 35

(Also reported in 899 N.W.2d 706.)

† Petition for Review Filed.

480

On behalf of the plaintiffs-appellants,the cause was submitted on the briefs of *Richard M. Esenberg, Thomas C. Kamenick* and *Michael Fischer* of *Wisconsin Institute for Law & Liberty*, Milwaukee.

On behalf of the defendants-respondents,the cause was submitted on the brief of *Stephen Nick*, city attorney and *Douglas Hoffer* and *Jenessa Stromberger*, assistant city attorneys, *City of Eau Claire*, and *Remzy D. Bitar* of *Arenz, Molter, Macy, Riffle & Larson S.C.*, Waukesha.

Before Hruz, Seidl and Reilly, JJ.

¶ 1. HRUZ, J. In this tax incremental financing (TIF) dispute, Voters with Facts, four limited liability companies, and fourteen individual plaintiffs (collectively, "Voters") appeal a dismissal on the pleadings granted in favor of the City of Eau Claire (the "City") and the City of Eau Claire Joint Review Board (the "Review Board").[1] Voters sought a judgment declaring unlawful and void two resolutions that amended and created Tax Incremental Districts (TID) Nos. 8 and 10, respectively. The circuit court dismissed these claims for a variety of reasons, including that Voters lacked standing and that Voters' constitutional challenges were precluded by *Sigma Tau Gamma Fraternity House Corp. v. City of Menomonie*, 93 Wis. 2d 392, 288 N.W.2d 85 (1980).

¶ 2. We agree with the circuit court that Voters lacks taxpayer standing to seek a declaratory judgment that Eau Claire acted unlawfully, either under its statutory authority or from a constitutional standpoint, in amending TID No. 8 and creating TID No. 10.

---

[1] Where necessary, this opinion refers to the City and the Review Board collectively as "Eau Claire."

Voters' complaint demonstrates Eau Claire made the required statutory findings when taking those actions, and the complaint therefore fails to allege noncompliance with any statutory directives. Meanwhile, Voters' fear that City payments to a developer might be improperly diverted to reimburse the developer for the demolition of historic buildings is based on speculation, and that claim therefore fails to allege a concrete harm. Finally, Voters' complaint fails to sufficiently allege a violation of the Wisconsin Constitution, on the basis of either uniformity clause principles or the public purpose doctrine. Because Voters' complaint fails to adequately allege Eau Claire acted "unlawfully" in any way, Voters lacks taxpayer standing to challenge the relevant municipal acts through a declaratory judgment action. We therefore affirm the dismissal of Voters' declaratory judgment claims.

¶ 3. As a corollary to the insufficiency of Voters' pleading, we also conclude declaratory judgment is not an appropriate method by which to challenge the municipality's factual findings required for amending/creating the relevant TIDs—in particular, the City's finding that a sufficient area of the TIDs was blighted, as well as the Review Board's "but for" determination that the development would not occur in the absence of the TIDs. Rather, the validity or "truthfulness" of a municipality's findings when forming a TID is reviewable by certiorari, using the standards applicable to such a review.

¶ 4. Voters pled a claim for certiorari review as an alternative to its declaratory judgment claims. We reverse the circuit court's dismissal of that claim, which dismissal the circuit court did not explain. We remand for further proceedings on Voters' certiorari

claim that Eau Claire's TID resolutions were "arbitrary, capricious, and outside the scope of their lawful authority."

## BACKGROUND[2]

¶ 5. "At its heart, TIF provides municipalities with a method of financing to develop or redevelop, in cooperation with private interests, unused or underused land." David N. Farwell, Comment, *A Modest Proposal: Eliminating Blight, Abolishing But-For, and Putting New Purpose in Wisconsin's Tax Increment Financing Law,* 89 MARQ. L. REV. 407, 412 (2005). Wisconsin's "Tax Increment Law" is found in WIS. STAT. § 66.1105 (2013–14).[3] Broadly speaking, the statutory TIF process, which involves the creation of specific taxing districts, allows municipalities to finance development in blighted or underdeveloped areas, using the increased tax revenue generated by the resulting increased property value within the TID to repay the costs of the improvements. Farwell, *supra,* at 415; *see also Sigma Tau,* 93 Wis. 2d at 396–97.

¶ 6. The TIDs at issue here were intended to support a development known as the "Confluence Project." A new performing arts center and residential development were to be constructed on a riverfront site

---

[2] The facts contained in this background section are largely derived from the complaint. We accept factual allegations contained therein as true for purposes of reviewing a motion to dismiss. *Data Key Partners v. Permira Advisers LLC,* 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693.

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted. The legislature amended WIS. STAT. § 66.1105 numerous times in 2015, and we use the version that would have applied to the relevant municipal actions challenged in this action.

in downtown Eau Claire. The developer purchased the properties used for the Confluence Project site in three separate transactions between May 2012 and June 2014. The developer has demolished several buildings that were formerly located on these properties and listed on the National Register of Historic Places.

¶ 7. The City's agreement with the developer required the developer to make improvements related to the Confluence Project. The project plan for TID No. 10 states the City would pay the developer $10.4 million toward certain development costs. The project plan for the amendment to TID No. 8 states that $11.1 million of the project costs will fund a parking ramp intended, among other purposes, to provide parking for the new performing arts center. The City would make an additional $1.5 million payment to the developer under that project plan. The funds paid to the developer depended upon its achieving specified milestones, but the funds are paid in a lump sum once those milestones are reached.

¶ 8. At a public meeting on August 18, 2014, the City plan commission voted to endorse the project plans for TID No. 10 and the amended TID No. 8. The City held open public hearings, at which numerous City residents, including many of the individual plaintiffs, objected to the TIDs. Nonetheless, the Eau Claire City Council—which is the applicable "governing body" for purposes of the Tax Increment Law—adopted resolutions approving the TIDs. Both resolutions specifically stated it was the City's finding that "not less than 50%, by area, of the real property within the amended boundary area of the District is a 'blighted area' and is in need of 'rehabilitation or conservation' within the meaning of [Wis. Stat. § 66.1105(2)(ae)1.]."

491

As Voters admits, both resolutions therefore contained the specific findings required by § 66.1105(4)(gm)4.a.

¶ 9. The matters were then sent to the Review Board, a body comprised generally of representatives of affected taxing authorities. *See generally* Wis. Stat. § 66.1105(4m). On September 26 and October 22, 2014, the Review Board adopted resolutions approving the amendment to TID No. 8 and the creation of TID No. 10, respectively. Both resolutions contained the statutorily required finding that the development described in the respective project plans would not occur without the creation or amendment, as applicable, of the TID. *See* Wis. Stat. § 66.1105(4m)(b)2.

¶ 10. According to the complaint, Voters with Facts is an "unincorporated association of grassroots citizen volunteers and [local] taxpayers who question the propriety" of the developments related to TID Nos. 8 and 10. On November 10, 2014, Voters sent a notice of claim to the City clerk. The following day, the City Council voted to adopt a resolution approving the City's 2015–2019 Capital Improvement Plan, which included appropriations of several million dollars to be spent on TID Nos. 8 and 10 in 2015. At the same meeting, the City Council also adopted a resolution authorizing the issuance of bonds, the repayment of which was to be funded by the incremental tax revenue generated by TID Nos. 8 and 10. The City did not respond to Voters' notice of claim and it was disallowed by inaction pursuant to Wis. Stat. § 893.80(1g).

¶ 11. Voters filed the present action in March 2015. The complaint sought a declaratory judgment invalidating the pertinent resolutions because: (1) Eau Claire allegedly failed to follow the statutory requirements when amending TID No. 8 (Count 1); (2) Eau Claire allegedly failed to follow the statutory

492

requirements when creating TID No. 10 (Count 2); (3) TID funds allegedly could be used unlawfully to reimburse the developer for the cost of demolishing historic structures, contrary to WIS. STAT. § 66.1105(2)(f)1.a. (Count 3); and (4) the TIDs allegedly operated in violation of the Wisconsin Constitution's Uniformity Clause, WIS. CONST. art. VIII, § 1, because the cash payments to the developer functioned as a tax rebate or credit (Count 4). Voters' final assertion was that, if declaratory judgment was an improper mechanism for judicial review of Eau Claire's actions related to the TIDs, review was alternatively available by certiorari, and Eau Claire's actions were "arbitrary, capricious, and outside the scope of [its] lawful authority" (Count 5).

¶ 12. Eau Claire filed a motion to dismiss. The motion advanced nine bases for dismissal, including that Voters lacked standing to prosecute its declaratory judgment and certiorari claims; that Voters' constitutional challenge was in fact a facial challenge to legislation that had already been upheld against constitutional attack; and that Voters' historic building allegations in Count 3 failed to state a claim.

¶ 13. At the decision hearing, the circuit court focused its attention largely on Voters' allegation that the area within the TID did not satisfy the statutory definition of "blight." The court rejected this claim, reasoning that the blight determination was one of legislative discretion, not an adjudicative fact susceptible to disproof in a judicial forum. The court therefore concluded Voters lacked standing to prosecute the claim. It also concluded that Voters' action presented a political question and was not ripe, and that Voters' constitutional claim failed under *Sigma Tau*. These determinations were reduced to a written order dis-

missing Voters' action. Neither at the hearing nor in the written order did the circuit court separately explain its decision to dismiss Voters' certiorari claim. Voters now appeals.

## DISCUSSION

¶ 14. A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693. "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Id.* (citing *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 11, 283 Wis. 2d 555, 699 N.W.2d 205). However, a court cannot add facts when analyzing the sufficiency of the complaint. *Id.* The complaint's sufficiency depends on the substantive law that underlies the claim, and the alleged facts related to that substantive law must "plausibly suggest [the plaintiff is] entitled to relief." *Id.*, ¶ 31. Whether a complaint adequately pleads a cause of action is a question of law. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).[4]

[4] Voters relies on *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 572 N.W.2d 855 (1998), for the proposition that "dismissal of a claim is improper if there are any conditions under which the plaintiffs could recover." *Id.* at 378. This language was largely cast aside in *Data Key Partners*, in which our supreme court adopted the federal "plausibility" pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Data Key Partners*, 356 Wis. 2d 665, ¶¶ 19–31.

*I. Voters' declaratory judgment claims*

¶ 15. The majority of Voters' claims seek declaratory relief, which is generally available under WIS. STAT. § 806.04. A plaintiff seeking declaratory relief must satisfy four conditions to have a viable claim: (1) the existence of a justiciable controversy, meaning one in which a claim of right is asserted against one who has an interest is contesting it; (2) the controversy must be between parties whose interests are adverse to one another; (3) the party seeking declaratory relief must have a legally protectable interest in the controversy; and (4) the issue involved must be ripe for judicial determination. *Tooly v. O'Connell*, 77 Wis. 2d 422, 433–34, 253 N.W.2d 335 (1977); *see also Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶ 41, 255 Wis. 2d 447, 649 N.W.2d 626. A party's standing to bring a declaratory judgment action is generally analyzed under the third factor. *See Town of Baraboo v. Village of W. Baraboo*, 2005 WI App 96, ¶ 35, 283 Wis. 2d 479, 699 N.W.2d 610. "Whether a party has standing to seek declaratory relief is a question of law we decide de novo." *Id.*

¶ 16. Here, Voters claims it has taxpayer standing to bring its four declaratory judgment claims against Eau Claire. "In order to maintain a taxpayers' action, it must be alleged that the complaining taxpayer and taxpayers as a class have sustained, or will sustain, some pecuniary loss; otherwise the action could only be brought by a public officer." *S.D. Realty Co. v. Sewerage Comm'n of City of Milwaukee*, 15 Wis. 2d 15, 21–22, 112 N.W.2d 177 (1961). "Any illegal expenditure of public funds directly affects taxpayers

and causes them to sustain a pecuniary loss." *Id.* at 22. As a result of the illegal expenditure, the governmental unit has less money to spend for legitimate government objectives, or it must levy additional taxes to increase its revenue. *Id.* Even an "infinitesimally small" pecuniary loss is sufficient to confer standing upon the taxpayer. *Hart v. Ament*, 176 Wis. 2d 694, 699, 500 N.W.2d 312 (1993).

¶ 17. Eau Claire argues *Lake Country Racquet & Athletic Club, Inc. v. Village of Hartland*, 2002 WI App 301, 259 Wis. 2d 107, 655 N.W.2d 189, is "the only case that addresses taxpayer standing to challenge the creation or operation of a TID," and it requires that Voters' claims (both declaratory judgment and certiorari) be dismissed. Contrary to Eau Claire's characterization, the issue in *Lake Country* was an athletic club's invocation of taxpayer standing to invalidate an agreement to sell village land on which a YMCA planned to build a rival recreational facility. *See id.*, ¶¶ 8–10. Issues related to the associated TID development had been disposed of by prior litigation and were not directly implicated in the subsequent lawsuit. *See id.*, ¶¶ 6, 9. Rather, *Lake Country*, like *S.D. Realty*, stands for the proposition that the successful invocation of taxpayer standing requires an allegation of either direct harm to the plaintiff's property or a risk of pecuniary loss or substantial injury. *Lake Country*, 259 Wis. 2d 107, ¶ 23. As *S.D. Realty* indicates, the alleged unlawful expenditure of public funds, if otherwise sufficient to survive a motion to dismiss, *is* sufficient to support taxpayer standing. *S.D. Realty*, 15 Wis. 2d at 22.

¶ 18. Ascertaining whether Voters has standing to advance its four declaratory judgment claims therefore turns on whether those claims adequately allege

the unlawful expenditure of public funds. Voters' declaratory judgment claims involve Eau Claire's alleged failures to follow statutory and constitutional law in amending and enacting TID Nos. 8 and 10, respectively. We therefore turn to the complaint's four declaratory judgment counts to ascertain whether Voters has sufficiently alleged Eau Claire's actions were unlawful, thereby conferring taxpayer standing.

### A. Failure to follow statutory requirements as to TID Nos. 8 and 10 (Counts 1 and 2)

¶ 19. A municipality may create a TID for any of four purposes, one of which is to combat blight. *See* WIS. STAT. § 66.1105(4)(gm)4.a. To validly adopt a TIF measure, the "local legislative body" must adopt a written resolution containing certain findings. Sec. 66.1105(4)(gm)4. The same findings are required when amending a TID, if the amendment adds territory to the district.[5] *See* § 66.1105(4)(h)1. For a TID created to remedy blight, the local legislative body must adopt a resolution that "[c]ontains [a] finding[]" that "[n]ot less than 50%, by area, of the real property within the district is . . . a blighted area." Sec. 66.1105(4)(gm)4.a. "Blighted area" is defined by the Tax Increment Law; as relevant here, it means:

> An area, including a slum area, in which the structures, buildings or improvements, which by reason of dilapidation, deterioration, age or obsolescence, inad-

---

[5] The parties do not address whether the amendment to TID No. 8 added territory to the district, such that it was necessary for the City to make the findings specified in WIS. STAT. § 66.1105(4)(gm)4. to amend the applicable project plan. Because Voters asserts such findings were necessary, and the City does not dispute that assertion, we assume the amendment did add territory to TID No. 8.

497

equate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of these factors is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare.

Sec. 66.1105(2)(ae)1.a.[6]

¶ 20. Once a local legislative body passes a resolution approving a TID, the matter proceeds to an independent joint review board, which must also sign off on the resolution and make a "but for" finding. *See* Wis. Stat. § 66.1105(4)(gs). "The board may not approve the resolution under this subdivision unless the board's approval *contains a positive assertion that, in its judgment,* the development described in the documents the board has reviewed under subd. 1. would not occur without the creation of a [TID]." Sec. 66.1105(4m)(b)2. (emphasis added).[7]

---

[6] The Tax Increment Law contains two other definitions of blight, neither of which has been argued or appears to be pertinent to this case. *See* Wis. Stat. § 66.1105(2)(ae)1.b., (2)(ae)2.

[7] Wisconsin Stat. § 66.1105(4m)(b)1. states the board "shall review the public record, planning documents and the resolution passed by the local legislative body or planning commission under sub. (4) (gm) or (h) 1." Voters' complaint alleged the proceedings before the Review Board in this case were deficient because the Review Board did not review these matters. On appeal, Voters mentions this allegation only in passing, and it does not develop any argument that its declaratory judgment claims should survive based on this allegation. We therefore deem the argument abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.,* 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). In any event, Voters' complaint alleged that the

¶ 21. As Voters recognizes, the City and Review Board resolutions approving both TID measures included the necessary findings under WIS. STAT. § 66.1105(4)(gm)4.a. and (4m)(b)2., respectively. Voters, however, alleges these were merely conclusory assertions that were neither supported by record evidence nor factually correct.

¶ 22. Eau Claire, for its part, argues the "blight" and "but for" determinations are essentially political judgments, unreviewable by the judiciary. Eau Claire suggests taxpayers in the affected area have political remedies available if they disagree with local legislative acts. "Moreover," Eau Claire argues, "taxpayers have a voice in the TIF process through the representatives of local taxing authorities."[8]

---

Review Board reviewed a three-page "Joint Review Board Report," but it failed to include any allegations regarding the contents of this document.

[8] Eau Claire contends that, under *Town of Baraboo v. Village of West Baraboo*, 2005 WI App 96, 283 Wis. 2d 479, 699 N.W.2d 610, only these local taxing authorities have standing to challenge local legislative decisions regarding TIF financing. *Town of Baraboo* observed that TIDs directly affect the amount of revenue "available to support county, school and vocational district budgets," so the legislature directed that these entities are entitled to representation on the joint review boards that must approve the creation or amendment of TIDs. *Id.*, ¶ 33. However, no provision was made for "towns adjacent to a TIF-creating municipality" to have a say in this process, because the placement of adjoining land in another municipality's TID "has no impact on the property tax base available to support an adjoining town's budget." *Id.* As such, the court concluded the Town of Baraboo lacked standing—specifically, a "legally protected interest"—to challenge the creation of a TID separately from its challenge to the annexation of land subsequently placed within that district. *Id.*, ¶ 37. *Town of Baraboo* did not address taxpayer standing to challenge a TID, and therefore it does not represent controlling authority on that

¶ 23. Both Voters' and Eau Claire's approaches are problematic. As we explain, Voters' argument fails to account for *all* the statutory language in Wis. Stat. § 66.1105(4)(gm)4.a. and (4m)(b)2. Eau Claire's argument fails to account for the possibility of arbitrary, wholly unsupported, or otherwise improper municipal TIF actions. For the reasons that follow, we conclude Voters lacks standing to challenge the municipal "blight" and "but for" findings through a declaratory judgment action. However, we also reject Eau Claire's assertion that such findings are unreviewable legislative acts. Rather, we conclude Voters' allegations in its complaint are reviewable by certiorari.

### 1. Relevant statutory requirements

¶ 24. Voters' argument requires an examination of the relevant language in Wis. Stat. § 66.1105(4)(gm)4.a. and (4m)(b)2., the meaning of which presents a question of law. *See Roehl v. American Family Mut. Ins. Co.*, 222 Wis. 2d 136, 142, 585 N.W.2d 893 (Ct. App. 1998). The relevant portions of subparagraph (4)(gm)4.a. and subdivision (4m)(b)2. have been set forth above. *See supra* ¶¶ 19–20. To summarize, both statutory provisions require that the applicable body approve a document that includes the relevant findings. It is undisputed that the City's resolutions and the Review Board's approvals contained the necessary statements of their findings.

¶ 25. Voters argues this is not enough. It seeks to transform Wis. Stat. § 66.1105(4)(gm)4.a.'s and (4m)(b)2.'s procedural requirements into substantive

issue. As explained above, *see supra* ¶¶ 16–18, taxpayer standing is contingent upon the affected taxpayer(s) sufficiently alleging the "unlawfulness" of a particular expenditure.

rules that render a TID "unlawful" unless the relevant body is *correct,* as a factual matter, in its finding. Setting aside for the moment the problem of how one determines whether a municipality's "blight" finding —or a review board's "but for" finding—is "correct," Voters' position is inconsistent with the clear statutory language, which merely imposes procedural hurdles to TIF use—namely, approval of TIDs by democratically accountable bodies who assert the requisite findings. In so holding, we note the legislature could have written Wis. Stat. § 66.1105(4)(gm)4.a. and (4m)(b)2. in a way that prohibited municipalities from creating a TID unless, respectively, the area was *in fact* blighted or the development would *in fact* not occur but for the TID. Specifically as to subdivision (4m)(b)2., accepting Voters' standing argument would require that we read the "in its judgment" clause out of the statute.

¶ 26. As a result, even assuming a neutral fact-finder would conclude there was an inadequate factual basis for the City's assertions of "blight" and the Review Board's "but for" determination, those occurrences alone do not support Voters' allegation that those bodies failed to follow the statutory procedure for creating a TID. Allowing Voters' claims regarding that statutory process to go forward would effectively require this court to second-guess the state legislature by rewriting the plain language of the statute, something we will not do. *See State v. Martinez,* 210 Wis. 2d 396, 408, 563 N.W.2d 922 (Ct. App. 1997). Voters may disagree with the merits of the City's and the Review Board's stated findings, but it cannot claim they failed to follow the required statutory protocol for the creation/amendment of the TIDs at issue here, such that the "findings"—and resulting TID measures—were "unlawful."

## 2. *Availability of judicial review*

¶ 27. Eau Claire appears to argue that, so long as the statutory requirements for the creation or amendment of a TID have been satisfied, its decisions involving TIF financing are unreviewable in a judicial forum. Further, it argues WIS. STAT. § 66.1105(4)(gm)4.a. and (4m)(b)2. require "determinations of public interest," which are legislative, not judicial, functions. Eau Claire portrays this lawsuit as a case in which some taxpayers "merely disagree with the wisdom of the TIF[-]related legislative actions."

¶ 28. Voters responds that the definition of "blight" under WIS. STAT. § 66.1105(2)(ae)1.a. is an "objective standard, the truth of which can be proved or disproved in court based upon evidentiary facts." It claims a declaratory judgment action will provide it a forum in which it can prove, as a factual matter, that an insufficient area within the TIDs was "blighted." Presumably, this argument also extends to a joint review board's "but for" determination under § 66.1105(4m)(b)2., although Voters does not specifically argue as such.[9]

¶ 29. We agree with Voters that a court may properly determine whether the relevant bodies have

---

[9] Because Voters focuses on the supposedly "objective" nature of the municipality's "blight" determination, and it does not present any argument regarding whether a joint review board's "but for" finding under WIS. STAT. § 66.1105(4m)(b)2. may be similarly challenged in a declaratory judgment action, the remainder of this opinion does not separately address subdivision (4m)(b)2.'s requirements, except that Voters may also challenge the Review Board's "but for" finding through certiorari review. *See infra* ¶ 60.

complied with the statutory requirements necessary to create or amend a TID. *See Fenton v. Ryan*, 140 Wis. 353, 355–56, 122 N.W. 756 (1909). If the legislative act imposes a substantive requirement, a court may determine, as a factual matter, whether that requirement has been satisfied. *See id.* (citing generally *In re Vill. of N. Milwaukee*, 93 Wis. 616, 67 N.W. 1033 (1896)). But here, the relevant statutory requirements were merely procedural, requiring that the resolution or other document passed by the applicable governing body contain specific findings. *See supra* ¶¶ 19–20, 24–26. Again, the legislature has not adopted any requirement that a municipality be *correct* in the challenged finding of "blight," at least in the sense that a neutral factfinder would conclude a sufficient area within the TID is *in fact* "blighted" under Wis. Stat. § 66.1105(2)(ae)1.a.

¶ 30. Rather, the relevant provisions of the statute regarding the municipality's "blight" determination indicate the matter is one of legislative discretion. Wisconsin Stat. § 66.1105(2)(ae)1.a., read together with Wis. Stat. § 66.1105(4)(gm)4.a., requires the municipality to determine that, within a sufficient area of the proposed TID, the structures, buildings or improvements are, for various reasons, both "conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime" and "detrimental to the public health, safety, morals or welfare." Voters does not explain how those findings can be challenged in a declaratory judgment action without a factfinder simply substituting its judgment for that of the municipality. *See Lake Country*, 259 Wis. 2d 107, ¶ 23 (holding that "simply registering ... disagreement with [municipal] legislative decisions" is insufficient to confer standing); *Buhler v. Racine Cty.*, 33 Wis. 2d 137, 146–47, 146 N.W.2d 403 (1966) (explaining that the

503

judiciary will not substitute its judgment on legislative determinations in the absence of statutory authorization).

¶ 31. In other words, even assuming an objective legal standard could be discerned regarding "blight" as defined in Wis. Stat. § 66.1105(2)(ae)1.a. (of which we are dubious, given the nebulous and judgment-laden nature of that definition), the language the legislature used in the Tax Increment Law does not require such an analysis. Rather, any determination—objective or otherwise—that an area is "blighted" is, by virtue of the statutory scheme, for the municipality to make. This conclusion is apparent for at least three reasons: (1) the legislature's identification of the "local legislative body" as the entity to make such a finding, *see* Wis. Stat. § 66.1105(4)(gm); (2) its use of the classically legislative "health, safety, morals or welfare" language in defining the nature of the "blight" finding that must be made, *see Rusk v. City of Milwaukee*, 2007 WI App 7, ¶ 9, 298 Wis. 2d 407, 727 N.W.2d 358 (2006) (observing cities are permitted to exercise police power over "all matters having a reasonable relation to the protection of the public health, safety or welfare"); *Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 281, 522 N.W.2d 277 (Ct. App. 1994) ("The police power of a municipality is broad and, in general, the courts may intercede only when the exercise of that power is clearly unreasonable."); and (3) its failure to include any express provisions for post-adoption challenges to the required findings (or resolutions more broadly).[10] These characteristics of the Tax Increment

[10] These aspects of the statute do implicate, at a general level, the political question considerations the circuit court mentioned. Although the circuit court framed these considerations in terms of the ripeness of Voters' declaratory judgment

Law, combined with the legislature's use of language conspicuously not requiring that a municipality be

action, political question considerations are more appropriately viewed as going to the "existence of a justiciable controversy," the first element necessary for a valid declaratory judgment claim. *See Tooly v. O'Connell*, 77 Wis. 2d 422, 433–34, 253 N.W.2d 335 (1977). "Ripeness" merely requires that the facts be "sufficiently developed to allow a conclusive adjudication." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 43, 309 Wis. 2d 365, 749 N.W.2d 211. "Nonjusticiability" refers to the "inappropriateness of the subject matter for judicial consideration." *Baker v. Carr*, 369 U.S. 186, 198 (1962).

Terminology aside, we disagree with Voters that the political question doctrine is wholly inapplicable to its allegations here regarding the municipality's legislative blight determination. "The political question doctrine is invoked by courts declining to address issues better left resolved by other branches of government." *Mills v. Vilas Cty. Bd. of Adjusts.*, 2003 WI App 66, ¶ 17, 261 Wis. 2d 598, 660 N.W.2d 705. The modern formulation of the political question doctrine was articulated in *Baker*, under which courts will decline to intrude on the authority of a coordinate branch of government under various circumstances. *Baker*, 369 U.S. at 217.

Voters observes, quite appropriately, that the "nonjusticiability of a political question is primarily a function of the separation of powers." *Id.* at 210. It further asserts "Wisconsin courts have never applied the political doctrine question [sic] to bar review of the actions *of local municipalities*." Instead, Voters claims the political question doctrine has been applied only to bar review of issues involving the authority of a coordinate branch of *state* government. *See, e.g., State ex rel. La Follette v. Stitt*, 114 Wis. 2d 358, 364–65, 338 N.W.2d 684 (1983) (per curiam); *School Bd. of Joint Dist. No. 2, Towns of Herman v. State Superintendent of Pub. Instruction*, 20 Wis. 2d 160, 180, 121 N.W.2d 900 (1963).

While we agree with the foregoing statements of law, Voters' failure to state a claim pertaining to the City's blight determination arises not by virtue of deference to the City, but out of deference to our state legislature, whose statutory dictates and procedures we are adhering to in rejecting Voters'

correct in its finding of "blight," readily support the conclusion that Eau Claire's actions, at least as alleged in Voters' complaint, are not illegal as a matter of law, and thus not challengeable through a taxpayer declaratory judgment action.[11]

¶ 32. However, we also reject Eau Claire's argument that such legislative acts by a municipality are inherently immune from judicial review. Eau Claire's argument fails to account for the possibility of an obviously "fabricated"—to use Voters' term—blight finding, rather than merely a question on the margins. Voters itself offered such a purported example at the hearing on Eau Claire's motion to dismiss, invoking the image of an "apartment building that was full, that was in good repair, [and] that was financially and physically sound." Eau Claire's only answer to such a manifestly arbitrary and unsupportable exercise of legislative discretion is to, apparently, let the affected citizenry voice their displeasure at the ballot box.

---

arguments in this regard. "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. This judicial deference to the legislature requires that our efforts toward statutory interpretation "focus primarily on the language of the statute." *Id.* "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *Id.*

[11] This being the case, we need not address Eau Claire's alternative argument that Voters with Facts should be dismissed as a party because it lacks associational standing. *See Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶ 102, 262 Wis. 2d 539, 664 N.W.2d 545 (observing appellate courts need not address additional issues when the resolution of one issue disposes of the case).

¶ 33. Like Voters, we find this answer incorrect. The predicates for a municipality's determinations regarding the formation of a TID must be subject to some form of judicial review. *See State ex rel. Anderton v. Kempf*, 69 Wis. 470, 473–74, 34 N.W. 226 (1887) (holding that judicial review was available in an election dispute because the relevant statute conferring jurisdiction upon the municipality's common council to "judge the election and qualification of its own members" did not unequivocally exclude court jurisdiction). The legislature here did not expressly and unequivocally bar judicial review. *See Town of Merrimac v. Village of Merrimac*, 2008 WI App 98, ¶¶ 6, 17, 312 Wis. 2d 754, 753 N.W.2d 552 (holding that a statute prohibiting town from contesting the validity of an annexation precluded judicial review, including by certiorari). However, the legislature seems not to have included any provisions in the Tax Increment Law relating to judicial review of the formation of a TID. *See State ex rel. Olson v. City of Baraboo Joint Review Bd.*, 2002 WI App 64, ¶ 32, 252 Wis. 2d 628, 643 N.W.2d 796 (Roggensack, J., dissenting) (rejecting majority's conclusion that the petitioner's statutory compliance claims had been waived and further observing that "[n]o statutory appeal process has been created to review the formation of a TIF District").

¶ 34. Thus, Voters' invocation of *Kempf* merely begs the question of what type of judicial review is available here. We agree with then-Judge Roggensack's assessment that the answer is review by common-law certiorari. *See State ex rel. Olson*, 252 Wis. 2d 628, ¶ 32 (Roggensack, J., dissenting); *see also id.*, ¶¶ 19–30 (majority opinion reviewing the substance of a municipality's and joint review board's

determinations under the certiorari standards). "Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal." *Ottman v. Town of Primrose*, 2011 WI 18, ¶ 34, 332 Wis. 2d 3, 796 N.W.2d 411. "It is well established in this state that where there are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari." *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 549–50, 185 N.W.2d 306 (1971); *see also Ottman*, 332 Wis. 2d 3, ¶ 35. A court engaging in certiorari review is limited to four inquiries: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its decision was arbitrary, oppressive, or unreasonable and represented the municipality's will and not its judgment; and (4) whether the evidence was such that the municipality might reasonably make the determination in question. *Ottman*, 332 Wis. 2d 3, ¶ 35.

¶ 35. As even Eau Claire observes, certiorari review has numerous virtues in the context of the actions being reviewed in this case. First, declaratory relief is disfavored if there is a "speedy, effective and adequate" alternative remedy. *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 307–08, 240 N.W.2d 610 (1976). Certiorari review represents such an alternative remedy. Second, certiorari review prevents the type of "lengthy and detailed discovery" Voters asserts will be necessary to "disprove" the City's and the Review Board's findings. *See Ottman*, 332 Wis. 2d 3, ¶ 35 ("When conducting common law certiorari review, a court reviews the record compiled by the municipality and does not take any additional

evidence on the merits of the decision."); *see also Nowell v. City of Wausau*, 2013 WI 88, ¶ 31, 351 Wis. 2d 1, 838 N.W.2d 852 (noting certiorari review generally involves more truncated proceedings than a de novo review). Moreover, and perhaps most pertinent here, certiorari review prevents the improper transfer of legislative power from the municipality to the courts. *See Nowell*, 351 Wis. 2d 1, ¶ 36. For the reasons stated above, the state legislature chose to create a Tax Increment Law that vests decision-making authority in local government bodies, which decisions, in the context of that statutory scheme, are best reviewed under certiorari standards.

**B. *Unlawful expenditure for the destruction of historic buildings (Count 3)***

¶ 36. Count 3 sought a declaratory judgment invalidating the resolutions pertaining to TID No. 10 on the basis that TID funds could be unlawfully used to pay for the demolition of historic buildings. Voters alleges the City's lump-sum payments to the developer may be used for "any project related purpose, including reimbursing the developer for its already-incurred costs." According to the complaint, the development agreement between the City and the developer "does not clearly provide that the Confluence developer may not use the lump sum payments to reimburse itself for the costs of demolishing listed properties."[12]

---

[12] Eau Claire contends the development agreement between the City and the developer, in fact, "explicitly forbids the developer from using TIF funds to acquire or demolish historic buildings." The development agreement, however, was not attached to the complaint, and (as Voters points out) the circuit

¶ 37. Had Voters alleged, and ultimately been able to substantiate, that City funds related to TIF No. 10 were used to pay for the demolition of historic buildings, Voters would be entitled to relief on its claim that such payments constitute unlawful expenditures. "Project costs" can include capital costs for the "demolition, alteration, remodeling, repair or reconstruction of existing buildings, structures and fixtures *other than the demolition of listed properties as defined in [Wis. Stat. § 44.31(4)]*." Wis. Stat. § 66.1105(2)(f)1.a. (emphasis added). Subsection 44.31(4), in turn, states that "listed property" means, among other things, any property "listed on the national register of historic places in Wisconsin."

¶ 38. Voters' complaint, however, fails to allege that anything unlawful has occurred, or is even likely to occur. The sum total of its allegations under Count 3 pertaining to the "injury" it has suffered is that: (1) the development agreement does not prohibit the developer from using the lump-sum payments to reimburse itself for demolishing historic buildings; and (2) "there is in fact no way to assure that the payments have been used as reimbursement for certain already incurred costs, and not used as reimbursement for others."

¶ 39. Voters apparently asserts the mere possibility that, at some future date, the developer would designate some payment from the City as reimburse-

court neither ruled on Eau Claire's request for judicial notice of the material contained in its affidavit, nor did the court convert Eau Claire's motion to one for summary judgment. We conclude Voters lacks standing to prosecute its historic buildings claim for other reasons, and we therefore need not address whether it is appropriate to consider the development agreement or other materials submitted with Eau Claire's affidavit.

510

ment for demolishing a historic building, is *right now* sufficient to invalidate the resolutions creating TID No. 10, as well as "any actions taken by the City" under them. However, Voters alleges no facts connecting any past or future payment to the developer's action in demolishing historic buildings, and it does not even allege that such a payment has occurred. No factfinder could reasonably infer such a connection based on the facts alleged. Voters' alleged injury is far too speculative to create a plausible claim for relief, and it therefore lacks standing.

¶ 40. Voters' historic buildings claim also fails under the ripeness doctrine. It is true that, given the nature of a declaratory judgment action, the ripeness required of such an action is different than the ripeness required in other actions. *Putnam*, 255 Wis. 2d 477, ¶ 44. A plaintiff "need not actually suffer an injury before seeking relief under the declaratory judgment statute." *Id.* These principles do not benefit Voters here because courts nonetheless avoid entangling themselves in abstract disagreements. *See id.* "The imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen." *Id.*, ¶ 46 (quoting *Loy v. Bunderson*, 107 Wis. 2d 400, 414, 320 N.W.2d 175 (1982)). Voters' historic buildings claim is of the latter type.[13]

---

[13] Because Voters lacks standing to prosecute its claim for the unlawful funding of the demolition of historic buildings, we need not address the City's alternative argument that the claim is moot.

## C. As-applied violations of the Wisconsin Constitution (Count 4)

### 1. Uniformity clause

¶ 41. Voters argues the circuit court erroneously dismissed its claim seeking a declaratory judgment that the TID resolutions at issue constituted an as-applied violation of the Wisconsin Constitution's uniformity clause. *See* WIS. CONST. art. VIII, § 1 ("The rule of taxation shall be uniform . . . ."). The purpose of the uniformity clause is to "protect the citizen against unequal and unjust taxation." *State ex rel. La Follette v. Torphy*, 85 Wis. 2d 94, 108, 270 N.W.2d 187 (1978). This rule encompasses the principle that all within a class "must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an *ad valorem* basis." *Sigma Tau*, 93 Wis. 2d at 410 (quoting *Gottlieb v. City of Milwaukee*, 33 Wis. 2d 408, 424, 147 N.W.2d 633 (1967)).

¶ 42. Voters' complaint surveyed the case law applying uniformity principles. In *Gottlieb*, our supreme court held that a statute "under which local governing bodies were permitted to exempt by ordinance real property held by redevelopment corporations from that portion of every local tax that was in excess of the 'maximum local tax,' was in clear violation of the uniformity clause" because it effected a property tax freeze for certain owners while others were forced to pay a disproportionately higher share of local property taxes. *Sigma Tau*, 93 Wis. 2d at 411; *see also Gottlieb*, 33 Wis. 2d at 412, 429. Voters also relied on *Torphy* and *Ehrlich v. City of Racine*, 26 Wis. 2d 352, 132 N.W.2d 489 (1965), for the proposition that a law partially exempting property from taxation is

512

constitutionally invalid. *See Torphy*, 85 Wis. 2d at 98, 111 (holding that a law providing tax credits to certain property owners for building improvements that resulted in increased property tax assessments violated uniformity, even though the owners initially paid the same amount to the local taxing authority); *Ehrlich*, 26 Wis. 2d at 354, 356 (invalidating on uniformity grounds a contract that provided the municipality with an easement over private land in consideration for payments equal to the amount of property taxes the landowner paid above a certain amount).

¶ 43. Voters' complaint, along with its appellate briefing here, also attempted to distinguish *Sigma Tau*, in which our supreme court upheld the Tax Increment Law against a facial uniformity challenge:

> Under tax increment financing, however, there is no such disproportionate impact upon taxpayers within the same territorial boundaries of the unit imposing the tax. All taxpayers within the territorial limits of each local governmental unit—county, school or [V.T.A.E.] district, etc.—continue to be taxed at a uniform rate based upon valuations uniformly arrived at. No taxpayer or group of taxpayers is being singled out for preferential treatment either in the form of an exemption from taxation or a tax credit. Thus, we conclude, taxation under tax incremental financing is uniform.

*Sigma Tau*, 93 Wis. 2d at 412. Voters' complaint alleged as follows regarding TID No. 10:

> 105. The *Sigma Tau* court did not rule on the constitutionality of an arrangement in which the owner of taxable property is given substantial cash payments, effectively reimbursing the owner (in advance) for all or a part of the taxes paid on its property, using TID funds.

513

106. That is the case here, where the project plans provide for millions of dollars of incremental TID taxes to be paid directly to the owner of the property within the TID, with no meaningful restrictions except that the developer use them to reimburse itself for "project costs." This arrangement functions as tax rebate or tax credit, and under the law as established by *Torphy*, constitutes a violation of the Uniformity Clause of the Wisconsin Constitution.

107. Because the developer here is being taxed at a more favorable rate than an owner of identically-assessed property elsewhere in Eau Claire would be, the Resolution creating TID #10 constitutes an unconstitutional exercise of municipal authority and is unlawful, void, and of no force and effect. Plaintiffs are entitled to a declaration to that effect.[14]

The circuit court rejected Voters' arguments and concluded *Sigma Tau* required dismissal of Voters' uniformity clause claim.

¶ 44. On appeal, Voters contends the circuit court erred in dismissing its constitutional uniformity claim because, unlike the taxpayer in *Sigma Tau*, here Voters brought an "as-applied challenge focused specifically on the facts as they exist in the City of Eau Claire." Voters' appellate argument focuses on the distinction between a facial and as-applied constitutional challenge. In general, the distinction is as follows: a facial challenge requires a showing that the law cannot be enforced under any circumstances, whereas an as-applied challenge requires an assess-

---

[14] Although Voters' appellate brief characterizes its pleading as impugning the constitutional validity of both TID Nos. 8 and 10, the pleading explicitly challenged only the resolution regarding TID No. 10 on this basis.

ment of the merits of the challenge by considering the facts of the particular case, not hypothetical facts in other situations. *State v. Wood*, 2010 WI 17, ¶ 13, 323 Wis. 2d 321, 780 N.W.2d 63. A successful as-applied challenge invalidates the law only as to the party asserting the claim. *Id.*

¶ 45. Eau Claire responds that Voters' uniformity argument constitutes a facial challenge to the Tax Increment Law, and that *Sigma Tau* controls. Eau Claire notes that cash grants from a city to "owners, lessees, or developers of land" located within a TID is permissible under Wis. Stat. § 66.1105(2)(f)2.d. as long as the city has signed a development agreement with the applicable party, which occurred here. Eau Claire contends Voters' complaint fails to allege any facts that would distinguish this case from any other application of this statutory provision. Eau Claire therefore reasons that Voters' challenge is to the facial validity of this particular subdivision paragraph.

¶ 46. Although we ultimately conclude *Sigma Tau* is dispositive regarding the constitutionality of the alleged TID scheme at issue here, we disagree with Eau Claire that *Sigma Tau* held the Tax Increment Law is constitutional forever and always, regardless of any legislative alterations or a plaintiff's specific claims. Voters correctly alleged that *Sigma Tau* did not address the constitutionality of Wis. Stat. § 66.1105(2)(f)2.d. and payments authorized thereby, but it failed (in its pleading, in its briefing before the circuit court, and in its briefing before this court) to adequately explain why that was the case. Contrary to what Voters suggests, the reason was not only because the facts in *Sigma Tau* were different from the facts here. Instead, *Sigma Tau* could not have addressed the constitutionality of direct payments to developers because § 66.1105(2)(f)2.d. did

515

not yet exist in 1980 when *Sigma Tau* was decided. *See* 2003 Wis. Act 126, § 3 (creating § 66.1105(2)(f)2.d.).

¶ 47. Be that as it may, Eau Claire is correct that the complaint fails to allege any unique attributes of the payments from the City to the developer in this case. Rather, Voters asserts that, in all instances, payments from a city to an authorized entity "effectively reimburs[e] the owner (in advance) for all or a part of the taxes paid on its property." This allegation constitutes a facial challenge to the constitutional validity of payments authorized by WIS. STAT. § 66.1105(2)(f)2.d., albeit one not directly addressed by the *Sigma Tau* court.

¶ 48. Also, the mere fact that *Sigma Tau* is not immediately dispositive of Voters' facial challenge does not *ipso facto* establish that Voters has taxpayer standing to assert its constitutional claim. Voters' uniformity argument is predicated on its allegation in its complaint that there are "no meaningful restrictions [on payments made under WIS. STAT. § 66.1105(2)(f)2.d.] except that the developer use them to reimburse itself for 'project costs.' " As we explain, and as Voters' allegation implicitly concedes, limiting the payments to reimbursement for "project costs" *is* a meaningful restriction, and one that compels us to conclude § 66.1105(2)(f)2.d. does not violate uniformity principles. We therefore agree with Eau Claire that Voters has failed to state a cognizable claim that the City expenditures related to TID No. 10 were unlawful on that ground.

¶ 49. "Project costs" is a defined term in the Tax Increment Law. *See* WIS. STAT. § 66.1105(2)(f)1. That phrase means

516

> any expenditures made . . . or estimated to be incurred by the city which are listed in a project plan as costs *of public works or improvements* within a tax incremental district . . . plus any incidental costs, diminished by any income, special assessments, or other revenues, including user fees or charges, other than tax increments, received or reasonably expected to be received by the city in connection with the implementation of the plan.

*Id.* (emphasis added). As is evident from the foregoing text, "project costs" are not merely any cost related to a redevelopment project; "project costs" are, by definition, associated with a public work or improvement.

¶ 50. The statute gives several examples of "project costs," all of which reinforce this point. For instance, suppose a city decides to demolish a dilapidated building on city-owned land and construct a public park. Most significantly, "project costs" include the capital costs associated with such efforts, including "the actual costs of the construction of public works or improvements, new buildings, structures, and fixtures; the demolition, alteration, remodeling, repair or reconstruction of existing buildings, structures and fixtures;" the acquisition of equipment to service the TID; and the costs associated with land clearing and grading and environmental pollution cleanup. Wis. Stat. § 66.1105(2)(f)1.a. "Project costs" also include financing costs, § 66.1105(2)(f)1.b.; any deficits incurred in the sale of city-owned land within the TID at less than cost, § 66.1105(2)(f)1.c.; and the cost of architectural or other professional services, § 66.1105(2)(f)1.d., as well as other things, *see* § 66.1105(2)(f)1.e.-n. In short, a "project cost" includes virtually all operational aspects of a particular public improvement project for which a TID would be necessary.[15]

---

[15] Certain government improvements do not qualify as

¶ 51. In the foregoing example, the city undertakes the relevant public improvements and is the direct recipient of the positive tax increment generated as a result of its efforts. But what if the necessary public improvements are to take place on property owned by someone other than the city? Under WIS. STAT. § 66.1105(2)(f)2.d., cash grants from the city to "owners, lessees, or developers of land" located within the TID are generally prohibited. The exception to this rule is if the "grant recipient has signed a development agreement with the city . . . ." *Id.* According to Voters' pleading, the City here entered into such an agreement with the developer, and that agreement explicitly limits the payments to reimbursement for "project costs."

¶ 52. Under this statutory scheme, and under the facts alleged here, the City's payments to the owner-developer in this case cannot possibly constitute an advance tax rebate or credit in violation of the uniformity clause. By limiting the City's payments under the development agreement at issue to reimbursing the developer for "project costs," the City is situated in this case in precisely the same way as the City of Menomonie in *Sigma Tau*, vis-à-vis the constitutionality of the Tax Increment Law.

¶ 53. In *Sigma Tau*, the City of Menomonie conceived of a plan whereby, using a combination of funding from the sale of land and bonds, it would purchase private property, pay to clear the land and for relocation costs, and convey the land to a developer to

---

"project costs," including generally the "cost of constructing or expanding administrative buildings, police and fire buildings, libraries, community and recreational buildings and school buildings," the cost of constructing facilities that are normally financed by user fees, and general government operating expenses. *See* WIS. STAT. § 66.1105(2)(f)2.a.-c.

518

construct a supermarket, parking facilities, and landscaping. *Sigma Tau*, 93 Wis. 2d 397. The positive tax increment generated by these improvements was used to retire the bonds. *Id.* at 398. The only apparent difference between the TID design in *Sigma Tau* and the design in this case is that, rather than the City undertaking certain improvements within TID No. 10 itself, it is paying the developer to perform those tasks under a development agreement. And, by Voters' own admission, here the money the developer received from the City can only be used for reimbursement of "project costs"—i.e. the costs of "public works or improvements" that the City would otherwise bear. *See* Wis. Stat. § 66.1105(2)(f)1.[16]

¶ 54. This significant and material restriction on the use of the funds compels us to conclude this case presents no issue regarding uniformity that has not already been settled by our supreme court. *See Sigma Tau*, 93 Wis. 2d at 412. Under the facts alleged here, the statute does not require "taxpayers owning equally valuable property . . . to pay disproportionate amounts of taxes," *id.*, nor does it have "the effect of changing the individual tax burden by granting a partial exemption," *see Torphy*, 85 Wis. 2d at 108. The money paid to the developer is reimbursement for expenses it has already incurred making public improvements; the only reasonable inference from Voters' factual allega-

[16] There is no indication in Voters' complaint that the reference to "project costs" in the development agreement means something other than how that term is defined in the relevant statute. *See* Wis. Stat. § 66.1105(2)(f). Nor is there any allegation that the City's lump-sum payments to the developer are, in fact, for something other than for the reimbursement of costs associated with public works or improvements, under which scenario the payments would be unlawful even apart from the constitutional uniformity issue.

tions is that the developer continues to pay taxes in proportion to the value of its properties. The complaint's factual allegations do not support Voters' characterization of the payments as unlawful tax rebates or credits. Such characterizations are mere legal conclusions, which we need not accept. *See Data Key Partners*, 356 Wis. 2d 665, ¶ 18.

## 2. *Public purpose doctrine*

¶ 55. Voters also argues it adequately pled—within Counts 1 and 2 of the complaint—an as-applied challenge to the relevant TID resolutions because it alleged Eau Claire lacked a valid public purpose for their enactment. Although often linked to the uniformity requirement, the public purpose doctrine is a "separate and inherent limitation on the power of taxation." *Sigma Tau*, 93 Wis. 2d at 412–13. The doctrine is a basic tenet of the Wisconsin Constitution, which mandates that public appropriations may not be used for private purposes. *Town of Beloit v. County of Rock*, 2003 WI 8, ¶ 20, 259 Wis. 2d 37, 657 N.W.2d 344; *see also Sigma Tau*, 93 Wis. 2d at 413.

¶ 56. Under our supreme court precedent, the legislature largely determines for itself what matters benefit the public, and courts will not interfere unless it appears that a law was obviously designed in its principal parts to benefit private persons and achieves only an indirect or remote public benefit. *Town of Beloit*, 259 Wis. 2d 37, ¶ 27. Courts are not bound by legislative expressions of public purpose, but the presumption of constitutionality accorded to laws also applies in this context, and courts give "great weight to

the opinion of the legislative body." *Id.,* ¶ 28. If there is any conceivable public purpose that would justify the expenditure, the constitutional test is satisfied. *Id.* (citing *Bishop v. City of Burlington,* 2001 WI App 154, ¶ 11, 246 Wis. 2d 879, 631 N.W.2d 656).

¶ 57. *Sigma Tau* held that the Tax Increment Law has a sufficient public purpose and, as a general matter, passes constitutional muster in this respect. "Because whatever money generated from the tax increments district is used only to pay for public improvements in that district and because the elimination of blight is a public purpose, both requirements of the public purpose doctrine would seem to be satisfied." *Sigma Tau,* 93 Wis. 2d at 414.

¶ 58. Voters contends its public purpose claim is not precluded by the *Sigma Tau* holding because, unlike the TID at issue in that case, the TIDs at issue here do not actually serve to eliminate blight. Voters reasons that if it proves the City's blight determination was in error, "the TIDs would lack a public purpose, and be unconstitutional." Thus, the sufficiency of Voters' pleading, vis-à-vis its public purpose challenge, turns on its allegation that the City's blight determinations related to TID Nos. 8 and 10, lacked sufficient factual bases. Indeed, Voters did not separately plead a specific claim relating to the TIDs lacking a valid public purpose, but included such allegations amongst its allegations pertaining to Counts 1 and 2.

¶ 59. If Voters is correct regarding the so-called factual inadequacy of the City's blight determinations, its avenue to assert this challenge and concomitant remedy is by certiorari review. *See supra* ¶¶ 32–35; *see also Hanlon v. Town of Milton,* 2000 WI 61, ¶ 13, 235 Wis. 2d 597, 612 N.W.2d 44 (holding that litigants

generally may raise constitutional objections to municipal determinations on certiorari review).[17] If, as Voters claims, the City's finding of blight was without a substantial basis in the evidence, or was arbitrary and unreasonable (or otherwise contrary to law), then the creation/amendment of the TIDs were not only an unlawful act, but also unconstitutional as lacking a valid public purpose. But because the resolutions regarding the TIDs contained the requisite legislative findings of blight, the resolutions on their face have a valid public purpose, and *Sigma Tau* controls. Thus, in the context of Wisconsin's Tax Increment Law, Voters' complaint fails to sufficiently allege that the City's resolutions are unlawful based on a violation of the public purpose doctrine, and Voters lacks standing to prosecute that constitutional claim in a declaratory judgment action.

## II. Certiorari review (Count 5)

¶ 60. Having determined that Voters' claims regarding the substance of the City's "blight" determination are cognizable only in certiorari, the question remains whether Voters is entitled to relief on that basis. Typically, this court determines for itself whether a plaintiff has adequately stated a claim for certiorari relief and whether the plaintiff should prevail on the merits of his or her claim. *See Ottman*, 332 Wis. 2d 3, ¶ 35 ("When conducting common law cer-

---

[17] We do not hold that a sufficiently meritorious constitutional challenge cannot be litigated in a declaratory judgment action. Rather, the nature of Voters' public purpose claim inherently constitutes a challenge to a body's legislative discretion granted by statute, which can only be litigated through certiorari. *See supra* ¶¶ 30–35.

tiorari review, a court reviews the record compiled by the municipality and does not take any additional evidence on the merits of the decision."); *State ex rel. Grezelak v. Bertrand*, 2003 WI 102, ¶ 7, 263 Wis. 2d 678, 665 N.W.2d 244 ("The legal sufficiency of the petition is a question of law, which this court reviews de novo."). However, Voters argues we must remand its certiorari claim for determination by the circuit court, and Eau Claire apparently agrees.[18] We therefore remand to the circuit court for further proceedings on Voters' sole remaining claim for certiorari review, which encompasses allegations that Eau Claire lacked substantial evidence to make the "blight" and "but for" determinations necessary to create/amend the TIDs at issue, and that those actions were done arbitrarily.

¶ 61. No WIS. STAT. RULE 809.25 costs allowed to the parties.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

[18] Eau Claire asserts that if we do not affirm the complete dismissal of Voters' action, we should remand to "allow the circuit court to exercise its discretion to determine whether to allow this action to continue only as a certiorari action." No such exercise of discretion is necessary in this case, as we have already rejected Voters' declaratory judgment claims on the basis that they should sound in certiorari, and Voters pled a certiorari claim as an alternative to those claims. In addition, none of Eau Claire's nine bases for dismissal filed in the circuit court would otherwise disallow the certiorari claim, and, indeed, Eau Claire does not argue as such in this appeal.