LAKE COUNTRY RACQUET & ATHLETIC CLUB, INC.,
Plaintiff-Appellant,†

v.

VILLAGE OF HARTLAND, Defendant-Respondent,

YMCA OF WAUKESHA COUNTY, Defendant.

Court of Appeals

*No. 02–0198. Submitted on briefs September 26, 2002.—Decided
November 13, 2002.*

## 2002 WI App 301

(Also reported in 655 N.W.2d 189.)

† Petition to review denied 1-21-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Hammes* of *Cramer, Multhauf & Hammes, L.L.P.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Raymond J. Pollen and Amy J. Doyle* of *Crivello, Carlson & Mentkowski, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. Lake Country Racquet & Athletic Club, Inc. appeals from a summary judgment dismissing its declaratory judgment action against the Village of Hartland. Lake Country contended that a conveyance of land by the Village to the YMCA of Waukesha County was contrary to the village ordinances and state laws. The trial court determined that Lake Country lacked standing to pursue a declaratory judgment against the Village. Because Lake Country has failed to demonstrate any personal stake in the outcome of this action or that it is directly affected by the conveyance, we uphold the trial court's standing ruling. We therefore do not reach the merits of Lake Country's challenge and we affirm the judgment.

## BACKGROUND

¶ 2. On September 14, 1998, the Hartland village board passed a resolution creating Tax Incremental Financing District No. 2 (TID No. 2) which included the approval of the project plan for that district. The Village placed all of the lands located within the boundaries of TID No. 2, which included Outlot 5, in the B-5 (light industrial zoning) classification of the Village of Hart-

land Zoning Code.[1] The Village and the YMCA then began discussions about the possible conveyance of Outlot 5 to the YMCA. If a sale was consummated, the YMCA proposed to construct a recreational facility on the site.

¶ 3. At this same time, an entity known as Wispark was planning to develop the Cottonwood Commerce Center, which was located within TID No. 2. Outlot 5 was located in the proposed area of the Commerce Center. In December 1998, the Village and Wispark reached an agreement for the development of the Commerce Center. Besides the Commerce Center project, Wispark was also developing River Reserve, a residential development on land adjacent to the Commerce Center. In developing the River Reserve area, Wispark was obligated to pay impact fees to the Village.[2] On December 14, 1998, the Village and Wispark agreed that, in partial satisfaction of its impact fees obligation, Wispark would transfer Outlot 5 to the Village. On April 20, 1999, in keeping with this agreement, the Village acquired ownership of Outlot 5 from Wispark.[3]

---

[1] The parties refer to this parcel of land interchangeably as "Outlot 5" and "Lot 3." In the interest of clarity, we will refer to it only as "Outlot 5."

[2] Pursuant to § 18.13 of the Village Code of Ordinances, "impact fees" are defined as "cash contributions, contributions of land or interests in land or any other items of value that are imposed on a Developer by the Village." Impact fees are imposed to reimburse the Village for "legal, engineering and design costs which relate directly to the public improvement" and include fees for "library facilities, park and recreation facilities, water, sanitary sewer, public works facilities, and fire facilities."

[3] The parties dispute whether Outlot 5 was "dedicated" or "transferred" by warranty deed. However, we need not resolve

¶ 4. According to the village administrator, Wallace Thiel, Outlot 5 had been mistakenly zoned as a B-5 classification at the time TID No. 2 was created. Therefore, in May 1999, the Village began taking steps to rezone the lot from a B-5 classification to a P-1 park district classification which allowed for recreational development. On September 13, 1999, the board formally approved this rezoning. Thereafter, the Village continued its discussions with the YMCA for the possible transfer of Outlot 5.

¶ 5. Learning of these developments, Lake Country filed a notice of claim with the Village on May 17, 1999, contending that the rezoning of Outlot 5 and the contemplated conveyance of the land to the YMCA violated the village ordinances and state law pertaining to the acceptance, dedication and use of park land. Lake Country subsequently filed an action seeking a declaratory judgment against the Village. The matter was assigned to Judge Katherine Foster.

¶ 6. At summary judgment, Judge Foster ruled that the rezoning of Outlot 5 was void because it violated the provisions of the TID Project Plan, which was adopted at the time TID No. 2 was created. In response to this ruling, the Village amended the project plan for TID No. 2 pursuant to WIS. STAT. § 66.0617 (1999–2000)[4] to allow for either an amendment of the plan itself or an amendment of the B-5 zoning designation. In response, the plan commission opted for the latter—recommending that the B-5 zoning regulations

this issue based on our conclusion that Lake Country lacks standing to challenge the conveyance of Outlot 5—whether by dedication or transfer. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if decision on one point disposes of an appeal, we will not decide other issues raised).

[4] All statutory references are to the 1999–2000 version.

be amended to allow public and private recreational uses and purposes consistent with the uses permitted under the P-1 (park district) regulations.

¶ 7. The village board approved this recommendation and, on December 11, 2000, the board enacted ordinance § 17.03(30)(d)10 of the Village Zoning Code, which recognized public and private recreational uses as conditional uses in a B-5 zoning district. Under this amendment, private recreational use was permitted on Outlot 5 as an approved conditional use.

¶ 8. During the fall of 2000, the Village solicited offers for the purchase and development of Outlot 5. The only proposal submitted before the prescribed deadline was from the YMCA. On March 12, 2001, the Village agreed to sell Outlot 5 to the YMCA for $400,000 and the YMCA agreed to construct a recreational facility on the property.

¶ 9. Lake Country responded with this second declaratory judgment action. The case was assigned to Judge Donald J. Hassin. Lake Country contended that: (1) the conveyance of Outlot 5 was void because it violated the constraints and restrictions imposed upon the Village by acceptance of the dedication of the lot in accordance with WIS. STAT. § 236.29; (2) the conveyance was void because it had not been approved by the Village of Hartland Park Board; (3) the conveyance violated the terms, conditions and restrictions imposed by the impact fees ordinance and the enabling statute, WIS. STAT. § 66.0617; and (4) the issuance of a conditional use permit authorized under the Village zoning code was prohibited until TID No. 2 has been terminated pursuant to WIS. STAT. § 66.1105(4)(gm).

¶ 10. On September 12, 2001, the Village filed a motion for summary judgment challenging Lake Country's standing to bring a declaratory judgment

action and, alternatively, asserting the legality of the agreement to convey Outlot 5 to the YMCA. Lake Country responded with its own motion for summary judgment. Following a hearing, Judge Hassin granted the Village's motion, ruling that Lake Country did not have standing to bring the action. The judge stated, "[A]bsent a specific grant of authority to challenge the zoning ordinance[,] . . . real estate owners cannot maintain a suit against the municipality unless there is some claim for individual pecuniary injury or pecuniary loss."[5]

¶ 11. Lake Country appeals.

## DISCUSSION

¶ 12. When reviewing a grant of summary judgment, we apply de novo the standards set forth in WIS. STAT. § 802.08. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). Pursuant to § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 13. The dispositive issue in this case is Lake Country's standing to bring this declaratory judgment

---

[5] Alternatively, Judge Hassin also addressed the merits of Lake Country's action against the Village. The judge rejected Lake Country's arguments that: (1) the land was "dedicated" and not transferred; and (2) the conditional use permit granted to the YMCA by the Village violated WIS. STAT. § 66.1105(4)(gm).

against the Village.[6] Whether a party has standing to seek declaratory relief presents a question of law we review de novo. *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 315, 529 N.W.2d 245 (Ct. App. 1995). We note that despite our de novo standard of review, we value a trial court's ruling on such a question. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

¶ 14. Lake Country rests its standing claim squarely on its status as a property owner and taxpayer in the Village. It does not claim any pecuniary loss or other form of damage or injury. The Village responds that mere status as a taxpayer or property owner does not confer standing. Instead, the Village contends that Lake Country must demonstrate a pecuniary loss or other cognizable damage or injury in order to have standing.

¶ 15. In order to maintain a declaratory judgment action under Wis. Stat. § 806.04, a justiciable controversy must exist. *See Loy v. Bunderson*, 107 Wis. 2d 400, 409–410, 320 N.W.2d 175 (1982). A controversy is justiciable when the following factors are present:

 (1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.

---

[6] We note that Lake Country makes reference on appeal to Judge Foster's rejection of the Village's challenge to Lake Country's standing in its initial trial court action. However, Lake Country does not further develop this argument and we will not address it further except to observe that Judge Hassin noted Judge Foster's decision and the existence of facts in that initial case which supported a claim of pecuniary loss to the taxpayers, Lake Country included.

(2) The controversy must be between persons whose interests are adverse.

(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

(4) The issue involved in the controversy must be ripe for judicial determination.

*Putnam v. Time Warner Cable*, 2002 WI 108, ¶ 41, 255 Wis. 2d 457, 649 N.W.2d 626. It is the third element of justiciability—often expressed in terms of standing—that is at issue in this case. *See City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983). In order to have standing to bring an action for declaratory judgment, a party must have a personal stake in the outcome and must be directly affected by the issues in controversy. *Village of Slinger v. City of Hartford*, 2002 WI App 187, ¶ 9, 256 Wis. 2d 859, 650 N.W.2d 81.

¶ 16. As noted, Lake Country contends that its status as a village taxpayer and property owner confers standing to prosecute this action. It argues that its rights, as well as those of other residents and taxpayers of the Village, are directly affected by the enactment of the zoning ordinances at issue and the creation and operation of TID No. 2. In support, Lake Country relies on *Town of Eagle* and WIS. STAT. § 806.04, the uniform declaratory judgments act.

¶ 17 WISCONSIN STAT. § 806.04(2), provides in relevant part:

Any person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instru-

115

ment, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Lake Country contends, consistent with § 806.04(2), that its rights are affected by the Village's amendment to the zoning ordinance and the creation of TID No. 2. We disagree. In *Village of Slinger*, 2002 WI App 187, the court of appeals held that in order to have standing to bring a declaratory judgment action, a party must have a personal stake in the outcome and be directly affected by the issue in controversy. *Id*. at ¶ 9. This is measured by whether the claimant has sustained, or will sustain, some pecuniary loss or otherwise will sustain a substantial injury to his or her interests. *Id*. at ¶ 12. Here, Lake Country has failed to bring forth any facts demonstrating any pecuniary loss or the risk of any substantial injury to its interests.

¶ 18. Lake Country relies on *Town of Eagle* for the proposition that Wis. Stat. § 806.04(2) should be construed liberally so as to afford relief from an uncertain infringement on a party's rights. *See Town of Eagle*, 191 Wis. 2d at 315, 316. We fully accept this principle and apply it in this case. However, Lake Country still fails under this favorable test to illustrate how the Village's actions infringe upon its rights.

¶ 19. In *Town of Eagle*, the Town and certain individual litigants sought a judicial declaration that the property assessment method utilized by the Town of Palmyra and the Wisconsin Department of Revenue was unconstitutional because it resulted in an inequitable tax burden when property values were equalized. *See id*. at 309. The respondents argued that the Town of Eagle did not have standing to bring the action. The court of appeals disagreed, stating that the Town had

standing "because inequitably equalized values affect [the Town's] allocation of state aid and its ability to borrow." *Id.* at 315. This demonstrated that the Town of Eagle was at risk for pecuniary loss, giving the Town a personal stake in the outcome. *See Village of Slinger*, 2002 WI App 187 at ¶ 12. Here, however, Lake Country fails to allege any facts even remotely suggesting that it is adversely affected, financially or otherwise, by the Village's actions. Rather than supporting Lake Country's argument, *Town of Eagle* supports the Village's argument.

¶ 20. Finally, Lake Country cites to *Weber v. Town of Lincoln*, 159 Wis. 2d 144, 148, 463 N.W.2d 869 (Ct. App. 1990), in support of its contention that declaratory judgment actions are frequently used to challenge the validity of land use regulations. We agree that *Weber* makes this statement. However, *Weber* does not stand for the further proposition that a party's mere status as a taxpayer or property owner is sufficient to confer standing *in all instances*.

¶ 21. In *Weber*, certain residents of the Town of Lincoln brought a declaratory judgment action against the Town challenging the town board's repeal of a town zoning ordinance. *Id.* at 146. The trial court ruled that the plaintiffs did not have standing to bring the action. *Id.* The court of appeals reversed, stating, "The Declaratory Judgments Act has been frequently used by municipal residents to test the validity of municipal legislation." *Id.* at 148.

¶ 22. This case is markedly different from *Weber*. Here, the Village has rezoned a single parcel of land to allow for certain conditional uses and has then conveyed the parcel to a private party for use consistent with one of those uses. That is a far cry from *Weber* where the Town's repeal of a zoning ordinance elimi-

117

nated the universal protections provided by the ordinance to all Town residents. In fact, the *Weber* court observed that the lack of a zoning ordinance would "affect[] all town residents." *Id.* at 149. The Village's action in this case carries no such dimension. Indeed, the cases cited by *Weber* in discussing the use of declaratory judgments to challenge land use regulations confirm our reading of *Weber. See Ramme v. City of Madison*, 37 Wis. 2d 102, 112, 154 N.W.2d 296 (1967) (granting standing because "the tax [at issue in that appeal] is a direct tax to him for which he may be sued"); *Boerschinger v. Elkay Enters., Inc.*, 32 Wis. 2d 168, 170–71, 145 N.W.2d 108 (1966) (property owners challenged the Town's rezoning of adjacent property to permit meat packing plant, alleging damages including depreciation of property).

¶ 23. Unlike the residents in *Weber*, Lake Country does not claim that the Village's actions affect any property owned by Lake Country. Nor do Lake Country's claims demonstrate any risk of pecuniary loss or substantial injury to Lake Country. As such, Lake Country has no personal stake in the outcome of this action; nor do the issues in controversy directly affect Lake Country. *See Village of Slinger*, 2002 WI App 187 at ¶ 9.[7] Instead, Lake Country is simply registering its

---

[7] We note that Lake Country additionally relies on *City of Waukesha v. Town Bd. of Waukesha*, 198 Wis. 2d 592, 543 N.W.2d 515 (Ct. App. 1995), in arguing that if both the City of Waukesha and County of Waukesha had standing to challenge the Town's grant of conditional use permits, then taxpayers and property owners should have standing to do so as well. However, Lake Country's reliance on *City of Waukesha* is misplaced. Although the issue of standing was raised in that case, it was deemed moot and therefore not addressed by the court. *Id.* at 597 n.2. Further, the case suggests that the City claimed

disagreement with legislative decisions of the Village. Such disagreement is insufficient to confer standing. *See id.* at ¶ 10.

## *CONCLUSION*

¶ 24. We uphold the trial court's ruling that Lake Country lacked standing to prosecute its declaratory judgment action. We affirm the judgment dismissing Lake Country's action.

*By the Court.*—Judgment affirmed.

pecuniary losses in relation to the conditional use permit. *Id.* at 607–08 (the trial court noted in its findings of fact the potential for the City to annex the property in question and the subsequent loss of reimbursement).