COURT OF APPEALS
DECISION
DATED AND FILED

February 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1638**

STATE OF WISCONSIN

Cir. Ct. No. **2023CV72**

IN COURT OF APPEALS
DISTRICT III

WISCONSIN REALTORS ASSOCIATION, INC.,

PLAINTIFF-APPELLANT,

V.

POLK COUNTY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed in part, reversed in part and cause remanded for further proceedings*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 STARK, P.J. Wisconsin Realtors Association, Inc., (the WRA) appeals from the circuit court's order granting Polk County's motion to dismiss the WRA's complaint. The WRA filed this declaratory judgment action,

presenting a facial challenge to several amendments to the County's zoning ordinances related to high density use, common open space, short-term rentals, easements, condominiums, and the sale or exchange of parcels between abutting property owners. The question presented in this case is whether the WRA has associational standing to challenge the amendments.

¶2 The circuit court concluded that the WRA lacked associational standing and dismissed the complaint. We affirm in part and reverse in part the court's decision. We reverse the court's decision with regard to the WRA's challenge to the amendments pertaining to short-term rentals for the reasons stated in *Wisconsin Realtors Ass'n v. City of Neenah*, 2025 WI App 49, 418 Wis. 2d 78, 25 N.W.3d 663. We remand this matter for further proceedings on that claim. We affirm, however, the court's dismissal of the WRA's remaining challenges based on the WRA's failure to establish the requirements for associational standing outlined in *Munger v. Seehafer*, 2016 WI App 89, ¶54, 372 Wis. 2d 749, 890 N.W.2d 22.

## BACKGROUND

¶3 The impetus for this case began on March 15, 2022, when the County adopted Resolution No. 15-22. This resolution amended several ordinances in the County's Code of Ordinances. *See* POLK COUNTY, WIS., CODE OF ORDINANCES chs. 32 and 42 (Mar. 15, 2022).[1] In response to Resolution No. 15-22, the WRA, a Wisconsin nonstock corporation comprised of over 17,500 members throughout the state, commenced this declaratory judgment action on

---

[1] We will refer to the County's Code of Ordinances in this decision as "the Ordinances," and all references to the Ordinances are to the March 15, 2022 amendment.

behalf of its members within the County who are adversely affected by these amendments. Specifically, the WRA's membership includes a diverse group of real estate professionals, including residential and commercial realtors, brokers, inspectors, appraisers, and property managers. According to the WRA's amended complaint, its "members work to preserve and advance the rights of over two million homeowners in Wisconsin by protecting and defending property rights, promoting economic growth, and keeping housing affordable."

¶4    As outlined in the WRA's amended complaint, its first cause of action challenges the County's amendments pertaining to "High Density Use" of riparian lots[2]:

> Section 42-212(p)[3] of the Ordinances … prohibit[s] High Density Uses within 1,000 feet of a public boat landing/ramp.
>
> Section 42-212(T) of the Ordinances … prohibit[s] adding land to existing riparian parcels if it increases the total number of dwelling units allowed on the parcels.
>
> Section 42-237(d)(5) of the Ordinances … make[s] High Density Use a conditional use under Residential District (R-1) zoning.

---

[2] These amendments were made to the Ordinances in Chapter 42, Article III, titled "Shoreland Protection." Under § 42-2 of the Ordinances,

> *High Density Use* means a lot held under fractional or shared ownership, directly or indirectly, where: (A) the lot is owned by more than one family, or more than two people, unless they are immediate family members, and (B) the dwelling unit(s) thereon are used by more than one family. The maximum number of dwelling units allowed for any lot shall be determined based on the lot size and respective zoning district.

[3] The WRA cited § 42-212(p), which appears to discuss "swine farming operation[s] … within the shoreland area." ORDINANCES § 42-212(p). However, subsection (r) provides that "[n]o lot shall be allowed to have more than one dwelling unit within a 1,000 feet [sic] of a public boat landing/ramp on a navigable water." ORDINANCES § 42-212(r).

> Section 42-245(c)(13) of the Ordinances … make[s] High Density Use a conditional use under Recreational Business and Commercial (B2) zoning.
>
> Section 42-246(c)(30) of the Ordinances … make[s] High Density Use a conditional use under Small Business and Commercial District (B3) zoning.

According to the WRA's amended complaint, WIS. STAT. § 700.28(2) (2023-24),[4] which states that "[a] political subdivision may not prohibit or unreasonably restrict a real property owner from alienating any interest in the real property," specifically prohibits the County from adopting such regulations because the "prohibition of 'High Density Use' lots within certain zoning districts prohibits and unreasonably restricts the owners of such lots from alienating fractional or shared interests in their lots."

¶5      Resolution No. 15-22 also created restrictions on common open space,[5] which the WRA challenges in its second cause of action.  **(R 12:5)**  For example, the Ordinances were amended to state that "[u]nder no circumstances shall the common open space provide access to a navigable water unless it's an unnamed water body, less than 20 acres in size, or all the land surrounding the water body is completely owned by one person, family or other entity." ORDINANCES § 32-105(17).  **(R 12:5)**  Additionally, according to the WRA's amended complaint, "Section 42-301(d)(1) prohibits the creation of an [o]utlot[6] if it provides any riparian access or rights, either directly or indirectly," and

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

[5] The design standards for common open space areas are outlined in ORDINANCES § 32-105.

[6] "Outlot means a lot remnant or parcel of land within a plat remaining after platting, which is intended for open space use, for which no development is intended other than that which is accessory to the open space use." ORDINANCES § 32-3.

"[§] 42-301(d)(2)f. prohibits an existing [o]utlot owner [from providing] any rights and/or access to any other lots or backlots." The WRA asserts that these amendments also violate WIS. STAT. § 700.28(2) "by prohibiting and unreasonably restricting real property owners from alienating an interest in their real property" because "[g]ranting rights or access such as an easement to a person across common open space or shared ownership of an [o]utlot to a navigable water is the granting of an interest in real property."

¶6      The WRA's third cause of action challenges the restrictions placed on short-term rentals. Resolution No. 15-22 amended the definition of "transient lodge" to mean "any single-family dwelling rented on a short-term basis with a maximum occupancy of 9-12 people for up to 7 days per month from May thru September, and a total of 174 days per year unless a conditional use permit is obtained for more days per month/year." ORDINANCES § 42-2. The WRA explains in its amended complaint that the amendments further "limit the maximum rental of a tourist rooming house to up to 7 days per month from May through September, and a total of 174 days per year unless a conditional use permit is obtained to rent more days per month/year." *See* ORDINANCES § 42-237(c)(1)p. According to the WRA, these amendments violate WIS. STAT. § 66.1014(2)(a), which states that, subject to the provisions in § 66.1014(2)(d), "a political subdivision may not enact or enforce an ordinance that prohibits the rental of a residential dwelling for 7 consecutive days or longer." Sec. 66.1014(2)(a).

¶7      The County also amended the Ordinances to impose restrictions on easements, which the WRA addresses in its fourth cause of action. Section 32-13 of the Ordinances was created to provide as follows:

The county shall review all easements, pursuant to [WIS. STAT.] ch. 236. The purpose of this review is to make sure they have an accurate legal description and are mapped properly, along with meeting the requirements of [ORDINANCES ch.] 32, and particularly this section. The county shall have 45 days to review and issue a determination on the legality of any proposed easements before the recording such document.

Furthermore, § 32-13(1)[7] of the Ordinances provides:

(1) The following easements shall be prohibited to prevent the intensification/commercialization of riparian parcels in Polk County and for the other purposes in section 32-1:

a. Any easement that, directly or indirectly, grants a non-riparian lot access to: (A) a riparian lot or any portion thereof, (B) the navigable water, (C) the right to use the navigable water for any purpose.

b. Any easement that, directly or indirectly, grants a person(s), partnership, corporation, limited liability company or other entity access or the right to use the navigable water through a riparian property unless the person is an immediate family member or an entity owned exclusively by an immediate family member for personal use primary by the immediate family member.

c. Any easement that, directly or indirectly, grants the ability to install a dock or moor a watercraft on a riparian parcel or in any other way allow usage of the navigable water.

Finally, § 32-68(e) of the Ordinances provides that "no easement for any commercial or industrial use shall grant access to: (A) the riparian lot or any portion thereof, (B) the navigable water, or (C) the right to use the navigable water for any purpose."

---

[7] The County also established § 42-301(c)(3), which has similar language to § 32-13(1) of the Ordinances.

¶8    Because an easement is an interest in real property, the WRA argues that the amendments "both prohibit[] and unreasonably restrict[] an owner of real property from alienating an interest in the real property by requiring County review and approval for granting an easement." According to the WRA, §§ 32-13, 32-68(e), and 42-301(c)(3) of the Ordinances "unlawfully prohibit the owners of such lots from alienating an interest in their lots by prohibiting their right to grant easements or other interests in their properties" and unlawfully require "all easements be submitted to the County for review and approval" in violation of WIS. STAT. § 700.28(2), WIS. STAT. chs. 30 and 236, and WIS. ADMIN. CODE ch. NR 326 (Nov. 2024).    Further, the WRA observes that WIS. STAT. § 236.45(2)(am)2. "states that subdivision regulation ordinances do not apply to easements."

¶9    The WRA's fifth cause of action challenges the amendments to the Ordinances with regard to condominiums. Section 32-43(c)(5) of the Ordinances provides:

> No    space: (a) held    in    common    ownership,    or (b) benefiting those who hold property in common ownership, shall provide access to navigable water unless it is an unnamed water body, less than 20 acres in size, or all the land surrounding the water body is completely owned by one person, family, or other entity.

The WRA argues that "[g]ranting access to someone through common ownership, such as the granting of an easement or through 'common elements,' as that term is used under the Condominium Ownership Act, WIS. STAT. ch. 703, is the alienating of an interest in real property." According to the WRA, § 32-43(c)(5) also violates WIS. STAT. § 700.28(2) "by prohibiting and unreasonably restricting real property owners from granting easements or creating common elements that provide access

7

to navigable waters," violates WIS. STAT. § 703.27,[8] and is contrary to WIS. STAT. ch. 30 and WIS. ADMIN. CODE ch. NR 326 (Nov. 2024).

¶10 Finally, the WRA's sixth cause of action targets the County's amendments regarding the sale or exchange of parcels of land between abutting property owners. Section 32-9(d) of the Ordinances provides:

> The sale or exchange of parcels of land between unrelated owners of abutting property in an arm's length transaction are allowed without a survey if additional parcels are not thereby created and the parcels resulting are not reduced below minimum lot sizes required by this chapter or other applicable laws or regulations.

Section 42-212(u)[9] of the Ordinances further provides that "[n]o land or acreage shall be added to an existing riparian parcel unless it does not increase the total

---

[8] WISCONSIN STAT. § 703.27 provides as follows:

(1) A zoning or other land use ordinance or regulations may not prohibit the condominium form of ownership or impose any requirements upon a condominium that it would not impose if the development were under a different form of ownership. No provision of a state or local building code may be applied differently to a building in a condominium than it would be applied if the building were under a different form of ownership unless the different application is expressly permitted in that provision and the different application is reasonably related to the nature of condominium ownership. No subdivision ordinance may apply to any condominium unless the ordinance is, by its express terms, applicable to condominiums and the application is reasonably related to the nature of condominium ownership.

(2) No county, city, or other jurisdiction may enact any law, ordinance, or regulation that would impose a greater burden or restriction on a condominium or provide a lower level of services to a condominium than would be imposed or provided if the condominium were under a different form of ownership.

[9] The WRA cited § 42-212(T) in its amended complaint, but the relevant language is found in § 42-212(u) of the Ordinances.

number of dwelling units allowed based on the lot's respective zoning district and shoreland minimum lot size."

¶11 The WRA asserts that §§ 32-9(d) and 42-212(u) of the Ordinances violate WIS. STAT. § 236.45(2)(am)3. That statute provides that "[o]rdinances [governing the subdivision or other division of land] may include provisions regulating divisions of land into parcels larger than 1 1/2 acres or divisions of land into less than 5 parcels," but "[s]uch ordinance … shall not apply to" "[t]he sale or exchange of parcels of land between owners of adjoining property if additional lots are not thereby created and the lots resulting are not reduced below the minimum sizes required by this chapter or other applicable laws or ordinances." Sec. 236.45(2)(am)3.; *see also* § 236.45(2)(ac). According to the WRA, § 32-9(d) violates § 236.45(2)(am)3. "because it includes the additional requirement that the property owners are unrelated and that the exchange is not an arm's length transaction," and § 42-212(u) violates § 236.45(2)(am) "when applied to an existing riparian parcel that adds land or acreage through the sale or exchange of parcels of land between adjoining property owners."

¶12 The WRA's amended complaint presented a facial challenge to the Ordinances, *see Olson v. Town of Cottage Grove*, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211, and it sought a declaration that the above Ordinances were unenforceable and an order requiring the County to cease their enforcement. The WRA's amended complaint specifically identified Jered Everts, "a real estate broker, and an owner of real property in the County," and Laura Baker, "a real estate salesperson, and a lessee of real property located in the County, who has an agreement with the owner of the property to purchase it in the future," as members of the WRA who own or lease property in the County.

9

¶13    The County moved to dismiss the WRA's amended complaint on the basis that the WRA lacked associational standing under the framework set forth in ***Metropolitan Builders Ass'n v. Village of Germantown***, 2005 WI App 103, 282 Wis. 2d 458, 698 N.W.2d 301.  According to the County, the WRA had failed to demonstrate "a direct effect on [its] legally protected interests." *See **id.***, ¶18.

¶14    After briefing and a nonevidentiary hearing, the circuit court issued an oral ruling, later memorialized by a written order.  The court concluded that the WRA lacked associational standing because "[t]here is no logical connection of a legally recognized interest that is germane to WRA's purpose" and because "the claims asserted would require Everts' participation in the lawsuit."  Accordingly, the court granted the County's motion to dismiss.  The WRA appeals.

## DISCUSSION

¶15    This case comes before us on a motion to dismiss.  A motion to dismiss tests the legal sufficiency of the complaint.  ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693.  When reviewing a motion to dismiss for a lack of standing, we liberally construe the pleadings, and we accept as true "[a]ll facts pleaded and all reasonable inferences from those facts."  ***Reetz v. Advocate Aurora Health, Inc.***, 2022 WI App 59, ¶6, 405 Wis. 2d 298, 983 N.W.2d 669 (alteration in original; citation omitted).

¶16    "Whether a party has standing is a question of law that we review independently."  ***Friends of the Black River Forest v. Kohler Co.***, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342 (citation omitted).  "'Standing' is a concept that restricts access to judicial remedies to those who have suffered some injury because of something that someone has either done or not done."  ***Munger***, 372 Wis. 2d 749, ¶48.  In Wisconsin, standing "is not a matter of jurisdiction, but

of sound judicial policy." ***McConkey v. Van Hollen***, 2010 WI 57, ¶15, 326 Wis. 2d 1, 783 N.W.2d 855 (footnote omitted). Despite this fact, we continue to look to federal cases as persuasive authority to resolve questions of standing. *See **Friends of the Black River Forest***, 402 Wis. 2d 587, ¶17.

¶17 The WRA's claims seek declaratory relief, which is generally available under WIS. STAT. § 806.04.[10] "In order to maintain a declaratory judgment action under … § 806.04, a justiciable controversy must exist." ***Lake Country Racquet & Athletic Club, Inc. v. Village of Hartland***, 2002 WI App 301, ¶15, 259 Wis. 2d 107, 655 N.W.2d 189. "A controversy is justiciable when the following factors are present":

> (1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.
>
> (2) The controversy must be between persons whose interests are adverse.
>
> (3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
>
> (4) The issue involved in the controversy must be ripe for judicial determination.

*Id.* (citation omitted).

¶18 Whether a party has standing to bring a declaratory judgment action is generally analyzed under the third factor. *See **id.*** "[I]n order to have standing to bring a declaratory judgment action, a party must have a personal stake in the

---

[10] As relevant here, Wisconsin's Uniform Declaratory Judgment Act provides that "[a]ny person interested … whose rights, status or other legal relations are affected by a … municipal ordinance … may have determined any question of construction or validity arising under the … ordinance … and obtain a declaration of rights, status or other legal relations thereunder." WIS. STAT. § 806.04(2).

outcome and be directly affected by the issue in controversy." *Id.*, ¶17. "This is measured by whether the claimant has sustained, or will sustain, some pecuniary loss or otherwise will sustain a substantial injury to his or her interests." *Id.* "Standing requirements in Wisconsin are aimed at ensuring that the issues and arguments presented will be carefully developed and zealously argued, as well as informing the court of the consequences of its decision." *McConkey*, 326 Wis. 2d 1, ¶16.

¶19 The WRA initiated this action to challenge the legality of the amendments to the Ordinances adopted by Resolution No. 15-22. The WRA's standing arguments rely on its assertion that its members "assist people in buying, selling, and managing property in the County" and "own, lease, purchase, and sell real property in the County"; therefore, its members "are subject to the restrictions in the ordinances" and its members' property "value[s are] reduced by the restriction[s] and limitations imposed on the uses of the properties by the County's unlawful ordinances," which also "make those properties less desirable to buyers looking to purchase properties for short-term rentals."

¶20 "An organizational plaintiff," like the WRA, "may have standing to bring suit on either its own behalf ('organizational standing') or on the behalf of one or more of its members ('associational standing')." *Munger*, 372 Wis. 2d 749, ¶53. Here, the WRA is asserting associational standing. Associational standing requires that the association demonstrate the following: (1) "that at least one of its members would have had standing"; (2) that "the interests at stake in the litigation are germane to the organization's purpose"; and (3) that "neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit." *Id.*, ¶54 (quoting *Sierra Club v. United States EPA*, 774 F.3d 383, 388 (7th Cir. 2014)); *City of Neenah*, 418 Wis. 2d 78, ¶9; *see also*

12

*Wisconsin's Env. Decade, Inc. v. PSC*, 69 Wis. 2d 1, 19-20, 230 N.W.2d 243 (1975); *Metropolitan Builders*, 282 Wis. 2d 458, ¶¶13-21. "Judicial efficiency is also a part of the analysis." *City of Neenah*, 418 Wis. 2d 78, ¶9; *see also Metropolitan Builders*, 282 Wis. 2d 458, ¶16 ("There is simply nothing to be gained from repeated litigation of the same issue.").

¶21 The WRA argues that its amended complaint asserts facts sufficient to establish associational standing. In advocating for that conclusion, the WRA relies on this court's decision in *Metropolitan Builders*, which it says "became the leading case in Wisconsin regarding a trade association having standing to bring an action on behalf of its members." That case involved a dispute over the Village of Germantown's impact fees levied on developers. *Metropolitan Builders*, 282 Wis. 2d 458, ¶1. The builders' association, with some of its members being developers who paid the fees, brought an action against the municipality for these fees, and one of the questions on appeal was whether the association had standing to challenge the fees on behalf of its developer members. *Id.*

¶22 We held that the builders' association had "standing so long as any of its developer members ha[d] the right to challenge the use of the impact fees." *Id.*, ¶13. Our decision relied on *Wisconsin's Environmental Decade*, which "recognized a special variation of th[e] standing rule for associations": "as long as members of [Wisconsin's Environmental Decade, Inc. (WED)] could meet the two-part standing test," which asks "first, whether the challenged action caused direct injury to the petitioner's interest and second, whether the interest affected was one recognized by law," then "WED could stand in their shoes." *Metropolitan Builders*, 282 Wis. 2d 458, ¶¶13-14. The court found that some of the builders' association's members met this two-prong test; therefore, the association had standing. *Id.*, ¶14.

¶23    According to the WRA, the *Metropolitan Builders* court "did not distinguish between the members' various roles (builder vs. developer vs. owner)," relying instead on the mandate to "construe the law of standing in Wisconsin liberally," certain public policy considerations, and judicial economy. *Id.*, ¶¶15-16.   Thus, the WRA contends that "[t]his action brought by the WRA against the County is equivalent, and the WRA likewise has standing here."   The WRA asserts that "[t]he circuit court correctly found" the following:

> (1) at least one of the members of the WRA has an interest in the use of [and] enjoyment of their property by using it the way that they want whether that be short-term rentals or high-density uses; (2) at least one member of the WRA has a legally protectable interest in determining the validity of the Ordinances; and (3) the issue of whether the Ordinances are valid is ripe for determination.

Given that "at least one of its members would have standing, and the interests at stake in the WRA's declaratory judgment action are germane—indeed, central—to the organization's purpose and affect the rights of Mr. Everts, Ms. Baker, and all other Polk County homeowners," the WRA argues that it "satisfies the tests articulated in *Munger* and *Metropolitan Builders*."

¶24    After briefing was completed in this case, we issued our decision in *City of Neenah*.[11]   That case also addressed whether the WRA had associational standing to challenge a municipality's ordinance pertaining to short-term rentals. *City of Neenah*, 418 Wis. 2d 78, ¶¶1, 7.   Applying the test for associational standing, we concluded that "there [was] unrefuted evidence in the [r]ecord (and the circuit court found) that at least one of WRA's members would have had

---

[11] On October 16, 2025, we ordered supplemental briefing on the limited issue of the extent to which, if at all, *Wisconsin Realtors Ass'n v. City of Neenah*, 2025 WI App 49, 418 Wis. 2d 78, 25 N.W.3d 663, may impact the standing issue presented in this appeal.

standing to challenge the Ordinance." *Id.*, ¶10.  We relied on an affidavit of an officer of the WRA, which averred that at least one member owned property in the City of Neenah intended for short-term rental use, that the regulation of short-term rentals was germane to WRA's stated mission of protecting property rights, and that "judicial economy is served by allowing WRA members to challenge the Ordinance through collective action rather than individually." *Id.*

¶25  The WRA asserts that "[t]he situation in the WRA's suit against Polk County is indistinguishable from its suit against the City of Neenah" because, here, it also "challenges local ordinances that restrict the use of residential real property … where at least one member of the WRA is negatively affected by Polk County's use restrictions."  By contrast, the County responds that *City of Neenah* "turns on facts not present in the instant case" because, "[u]nlike [*City of*] *Neenah*, this case involves multiple ordinance provisions governing riparian setbacks, lot density, and condominium siting—regulations that affect distinct categories of landowners and require property-specific factual development."  According to the County, the "WRA must demonstrate that at least one identified member has standing *as to each challenged provision* and that adjudicating the claims would not require member participation," and "[b]ecause those showings are absent here, [*City of*] *Neenah*'s application of [the test for associational standing] in this case supports affirmance, not reversal."  (Emphasis added.)

¶26  We agree with the County that *City of Neenah* is distinguishable because the record in this case fails to support the assertion that at least one member of the WRA has standing in his or her own right on *each* claim in the WRA's amended complaint.  As noted above, *see supra* ¶¶4-11, the WRA's amended complaint challenges multiple provisions of the County's Ordinances addressing various aspects of land use, not only a short-term rental ordinance like

15

in *City of Neenah*. Although the law of standing in Wisconsin is to be construed liberally, *see Metropolitan Builders*, 282 Wis. 2d 458, ¶15, that instruction is not a license for courts to rubber-stamp their review. Even under our liberal approach to standing, the *Munger* elements must be satisfied.

¶27 Further, we agree with the County that standing must be established on a claim-by-claim basis. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."); *Davis v. FEC*, 554 U.S. 724, 734 (2008) (same). We conclude that, in this state, the same is true of a court's determination of associational standing. *See Munger*, 372 Wis. 2d 749, ¶54 (acknowledging that part of the test for associational standing is determined with respect to "the claim asserted []or the relief requested" (citation omitted)).

¶28 The County appears to admit, if not concede, that pursuant to *City of Neenah*, the WRA members' affidavits in the record—averring property ownership in the County or an agreement to purchase property in the County that the member "intend[s] to license as a 'Short Term Rental'" or "desire[s] to use … as a short-term rental," respectively—establish a personal stake in the outcome that will be directly affected by the issue in controversy. *See City of Neenah*, 418 Wis. 2d 78, ¶10; *see also Lake Country*, 259 Wis. 2d 107, ¶17. We agree with this apparent concession. Further, the record also includes an affidavit attesting that the WRA works to, among other things, "protect[] and defend[] property rights," which, as *City of Neenah* explained, "would implicate the right to rent a residential dwelling" and would establish that the "WRA's interest in challenging the Ordinance[s] is … germane to its purpose, and it has sufficient stake to carefully and zealously present the issues." *See City of Neenah*, 418

16

Wis. 2d 78, ¶10. Accordingly, pursuant to our holding in *City of Neenah*, we conclude that the WRA has associational standing to challenge those sections of the Ordinances pertaining to short-term rentals. We therefore reverse the circuit court's order dismissing the WRA's third cause of action in its amended complaint and remand for further proceedings on that claim.

¶29 We conclude, however, that *City of Neenah*'s holding does not provide WRA with standing on the remaining claims in this case. Considering first whether "at least one of [the WRA's] members would have had standing," *see Munger*, 372 Wis. 2d 749, ¶54, we conclude that the record contains no factual allegations suggesting that any of the WRA's members are directly affected by the remaining amendments to the Ordinances, let alone demonstrating that the members have or will suffer pecuniary loss or the risk of any substantial injury to their interests.

¶30 As noted, the WRA alleged in its amended complaint that its "members, including, but not limited to, Everts and Baker, own, lease, purchase, and sell real property in the County whose value is reduced by the restriction[s] and limitations imposed on the uses of the properties by the County's unlawful ordinances." Further, within its discussion of each cause of action, the WRA argued that "its members have a legal interest and a personal interest in the controversy … because the County's Ordinance affects the use of properties in the County, which, in turn, affects their ownership, use, purchase, and sale, including, but not limited to, their own properties."

¶31 We conclude that the WRA's assertions are insufficient to demonstrate that one or more of its members "have a personal stake in the outcome and [are] directly affected by the issues in controversy." *See Lake*

*Country*, 259 Wis. 2d 107, ¶15.  The WRA's allegation that the Ordinances "affect[] the[] ownership, use, purchase, and sale" of property is vague, speculative, and is a "generalized grievance" shared by every property owner in the County or those seeking to purchase property in the County.  *See Teigen v. WEC*, 2022 WI 64, ¶36, 403 Wis. 2d 607, 976 N.W.2d 519 (observing that "so-called 'generalized grievances' 'do not normally constitute a particularized injury necessary to establish standing'" (citation omitted)), *overruled on other grounds by*, *Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that standing requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'" (citations and footnote omitted)); *see also Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) ("Because a generalized grievance is not a particularized injury, a suit alleging only generalized grievances fails for lack of standing.").

¶32     Further, the assertion that the "value [of Everts' and Baker's real property] is reduced by the restriction[s] and limitations" fails to identify how or why that is true for each amendment.  As the County argues, the remaining amendments seek to regulate riparian-lot density, common open space, condominium plats, inter-riparian transfers, and County review of easements, which "affect distinct categories of property owners," and "[u]nlike the [short-term rental] provisions, which conceivably affect members who own rental dwellings, the remaining ordinances regulate … matters that require parcel-specific factual development."  At best, the member affidavits in the record merely aver that the Ordinances' various restrictions "apply to the[ir] Property," but they do not explain how those restrictions specifically impact their interests.

¶33 Wisconsin law is clear that mere status as a property owner is generally insufficient to confer standing and that a successful invocation of taxpayer standing requires an allegation of either direct harm to the party's property or a risk of pecuniary loss or substantial injury. *See Lake Country*, 259 Wis. 2d 107, ¶17. Here, the WRA does not allege facts establishing a concrete injury, such as the existence of an appraisal or expert testimony demonstrating an immediate diminution in property value; that any member intended to pursue a specific use of their property and is now prohibited from doing so; that a prospective buyer withdrew from a sale because of the amendments; that any member incurred costs to remain in compliance with the amended Ordinances; or that a member applied for, and was denied, a permit or land-use application because of the amendments.

¶34 These are the types of facts the WRA must allege to suggest that a member is directly affected and will sustain an injury, financially or otherwise, to his or her interests because of the County's actions. Absent some allegation of a concrete and imminent injury—i.e., that a member is directly affected or will be affected—as a result of the amended Ordinances, the members of the WRA who own property in the County are essentially property owners who do not like the new rules. Still, they have not alleged that they are actually blocked from doing anything on or with their property. In other words, the WRA's argument for standing is akin to a contention that the members have standing based on their status as taxpayers and property owners, which contention we rejected in *Lake Country*. *See id.*, ¶¶16, 23. Because the WRA fails to allege that any member is directly affected or has a legally protectible interest under WIS. STAT. § 806.04, it has not shown that at least one of its members would have had standing pursuant to *Munger*'s first element.

19

¶35 Second, we agree with the circuit court and the County that the interests at stake here are not germane to the WRA's purpose. *See Munger*, 372 Wis. 2d 749, ¶54. The circuit court found that "[t]here is no logical connection of a legally recognized interest that is germane to WRA's purpose," reasoning that "the ones harmed, if any, by the ordinances, are the real property owners or homeowners of Polk County and not real estate agents or brokers of WRA that just happen to own property here in Polk County." While the WRA averred in its affidavit that "the WRA's members work to preserve and advance the rights of over two million homeowners in Wisconsin by protecting and defending property rights, promoting economic growth, and keeping housing affordable," it also admitted that its "membership is composed of residential and commercial real estate sales agents, brokers, appraisers, inspectors, property managers, bankers, and other professionals who touch real estate."

¶36 The WRA is, at base, a realtor's association, not a property owner's association. Thus, the WRA's mission is professional, not proprietary. Challenging the ordinance amendments at issue, however, is about landowner interests, not professional practice. Any effect the ordinances would have on real estate professionals would be indirect, which is insufficiently germane to justify associational standing.

¶37 Furthermore, the members of the WRA may be impacted by the County's amendments to the Ordinances in materially different ways. While some members may be property owners, others may not be, and still others may benefit from the changes, while others may not. Because the impact varies, the WRA cannot plausibly claim its challenge reflects a unified, germane interest of the

membership as a whole.[12]  *See **International Union v. Brock***, 477 U.S. 274, 290 (1986) ("[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."); ***United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.***, 517 U.S. 544, 555-56 (1996) (explaining that requiring that an "association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary"); *see also **McConkey***, 326 Wis. 2d 1, ¶16.

¶38    Moreover, suggesting that ordinance changes like the ones at issue here affect property values or market stability stretches the germaneness analysis too far.  Under this view, almost any government action could be framed as affecting the real estate market, rendering the germaneness requirement superfluous.  For example, we are persuaded by the United States Court of Appeals for the Seventh Circuit's reasoning in ***Mainstreet Organization of Realtors v. Calumet City***, 505 F.3d 742 (7th Cir. 2007).  There, the city enacted an ordinance prohibiting "the sale of a house without an inspection to determine whether it is in compliance with the [c]ity's building and zoning codes" and requiring that the house "be brought into compliance with the code."  ***Id.*** at

---

[12] We recognize that these arguments would also apply to the amendments to the short-term rental provisions of the Ordinances.  If this were a case of first impression, and in the absence of *City of Neenah*, we would also question whether the WRA has standing to challenge the amendments as they relate to short-term rentals.  We do not discern a material distinction, for standing purposes, between the amendments to the Ordinances.  Nevertheless, *City of Neenah* controls our analysis, and under *Cook v. Cook*, 208 Wis. 2d 166, 185-90, 560 N.W.2d 246 (1997), we are bound by that precedent.

743-44.  Mainstreet Organization of Realtors, the association, argued "that the ordinance deprives homeowners of property without due process of law" and sought "to enjoin the enforcement of the ordinance." *Id.* at 744.

¶39    The court determined that the association did not have standing because "[r]eal estate brokers … do not have standing to challenge a law that impedes the sale of property they would like to broker." *Id.*  According to the court,

> The initial victims of an ordinance impeding the sale of homes are homeowners who would like to sell—or perhaps all homeowners subject to the ordinance; for as we said, any impairment of the salability of a property reduces its value because salability ("alienability" in an older legal vocabulary) is one of the rights that, along with such other rights as the right to the exclusive enjoyment of the property, make a fee-simple interest more valuable than other interests in property, such as that of a licensee.  But anything that impedes the sale of property, and by impeding it reduces the number of sales and the average sale price, harms other people besides the owners.  It harms real estate brokers, sure, but it also harms title insurance companies, mortgage lenders, termite inspectors, moving companies, interior decorators, renovators, prospective home buyers, sellers of "for sale" signs, suppliers of paint for the "for sale" signs, lessors of real estate brokers' offices, colleges that the children of real estate brokers can no longer afford to attend because the brokers' incomes have declined (and the children themselves, of course), and so on ad infinitum, or at least ad nauseam.  If all these incidental victims could sue, the courts would be overwhelmed.

*Id.* at 745-46.  Thus, we agree with the County that the WRA's remaining causes of action fail *Munger*'s second element because the interests at stake with regard to those ordinance amendments are not germane to the WRA's purpose.

¶40    As to *Munger*'s third element, in light of our above conclusions, and as all three elements of *Munger* must be met for the WRA to have standing, we conclude that we need not address whether the claim asserted or the relief

22

requested require an individual member's participation in the lawsuit, *see City of Neenah*, 418 Wis. 2d 78, ¶10 (omitting discussion of the third *Munger* element beyond stating that the WRA "has sufficient stake to carefully and zealously present the issues").

¶41    In sum, the circuit court correctly concluded that the WRA failed to establish associational standing as to the majority of its causes of action, and the court's dismissal of those claims is therefore affirmed.  Although *City of Neenah* confirms that the WRA may, in appropriate circumstances, satisfy the *Munger* criteria, that decision rested on a narrow and well-supported factual record tied only to a short-term rental ordinance.  Because the WRA did not demonstrate that at least one identified member has standing to challenge each amendment to the Ordinances and that the interests at stake with regard to those amendments are germane to the WRA's purpose, it failed to meet the requirements for associational standing.  Accordingly, we reverse only as to the short-term rental ordinance amendments—the third cause of action in the WRA's amended complaint—we remand for further proceedings on that cause of action, and we affirm the circuit court's dismissal of the WRA's remaining claims.

¶42    We decline to award costs to either party.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded for further proceedings.

Recommended for publication in the official reports.